UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACE CAM, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUNWAY AI, INC.,<br><br>Defendant. | **Case No.: 1:26-cv-01362-LAK** |
| BUSINESSING LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUNWAY AI, INC.,<br><br>Defendant. | **Case No.: 1:26-cv-01655-LAK** |

**PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CLASS COUNSEL**

Plaintiffs Ace Cam, Inc. and Businessing LLC ("Plaintiffs") respectfully move this Court pursuant to Federal Rule of Civil Procedure 42(a) for an Order consolidating the above-captioned action, *Businessing LLC v. v. Runway AI, Inc.*, Case No. 1:26-cv-01655-LAK (the "*Businessing* Action") with the first-filed action, *Ace Cam, Inc. v. Runway AI, Inc.*, Case No. 1:26-cv-01362-LAK (the "*Ace Cam* Action"), (collectively the "Related Actions"). Plaintiffs also request the Court appoint Tom Kherkher of Ellzey Kherkher Sanford Montgomery LLP and Gary Klinger of Milberg, PLLC as Interim Co-Lead Class Counsel, pursuant to Federal Rule of Civil Procedure

1

23(g)(3). Plaintiffs further request that the Court stay all responsive pleading deadlines in the Related Actions and set a schedule for the filing of a Consolidated Amended Complaint.[1]

## I.  BACKGROUND

Plaintiff Ace Cam, Inc. filed the first-Class Action Complaint against Runway AI, Inc. ("Runway" or "Defendant") on February 18, 2026. Thereafter, the *Businessing* Action was filed on February 27, 2026. This Related Actions allege that Runway unlawfully bypassed YouTube's technological protection measures ("TPMs") in order to scrape and download copyrighted videos at scale for use in training and commercializing its generative AI video model. Ace Cam Compl. ¶ 1. Plaintiffs allege that YouTube provides streaming-only access to audiovisual works and employs contractual and technical controls—including access restrictions, API limitations, download prohibitions, and IP monitoring—to prevent bulk extraction of underlying video files. Ace Cam Compl. ¶¶ 4–6, 28–36, 43–45. Plaintiffs also allege that YouTube maintains strict policies against scraping, and a framework to allow creators to expressly choose whether their YouTube content is used by third parties for AI training. Ace Cam Compl. ¶¶ 37-42.

Despite these protections, Runway compiled internal datasets identifying thousands of YouTube channels and over one hundred thousand videos for ingestion into its AI training pipeline Ace Cam Compl. ¶¶ 49–51. Runway intentionally bypassed YouTube's TPMs by deploying automated scraping tools, including yt-dlp, and rotating proxy infrastructure designed to evade detection and blocking, thereby obtaining file-level copies of thousands of creators' videos without authorization Ace Cam Compl. ¶¶ 52–68, 74. Runway then used the scraped content to train and improve its commercially marketed "Gen-3" text-to-video system. Ace Cam Compl. ¶¶ 46–47, 54–57, 81–87. Runway did not obtain consent from YouTube or the affected creators and instead

---

[1] Counsel for Defendant has not yet appeared in this case.

chose circumvention-based acquisition rather than lawful licensing. Ace Cam Compl. ¶¶ 69–72, 77–80, 88–89. On behalf of a nationwide class of creators whose YouTube-hosted works were accessed at the file level through circumvention of TPMs (Ace Cam Compl. ¶ 93), Plaintiffs assert that Runway's conduct violates the Digital Millennium Copyright Act's (DMCA) anti-circumvention provisions, 17 U.S.C. § 1201(a), and seek statutory damages and injunctive relief. Ace Cam Compl. ¶¶ 101–110.

## II.    ARGUMENT

### A. Consolidation of the Related Actions is Appropriate

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). Rule 42(a) authorizes a court to consolidate separate actions if the actions involve common questions of law or fact. *See Espinal v. DiDi Glob. Inc.*, 2021 WL 4754911, at *1 (S.D.N.Y. Oct. 12, 2021). Rule 42(a) provides:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added). In making this determination, the court considers "[w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Chun Huang v. Canntrust Holdings Inc.*, 2020 WL 9077513, at *1 (S.D.N.Y. Apr. 16, 2020) (citing *Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 25 (2d Cir. 2014).

The Court "has broad discretion to determine whether consolidation is appropriate."

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (the power to consolidate related actions falls within the inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). "Consolidation is appropriate in order to serve the interests of 'judicial economy' and 'to avoid unnecessary costs or delay.'" *In re Facebook, Inc., IPO Securities & Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Celotex*, 899 F.2d at 1284-85). "In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation.". *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 245 (S.D.N.Y. 2023) (quoting *Celotex*, 899 F.2d at 1285).

The only requirement set out in Rule 42(a) for consolidation is that the cases involve "a common question of law or fact." Fed. R. Civ. P 42(a). This requirement is plainly met here. The Related Actions before this Court are substantially the same and consolidation is appropriate. Each lawsuit arises from the same common set of alleged facts, including: (1) that YouTube employs TPMs to prevent bulk extraction of underlying video files (*see* Ace Cam Compl. ¶¶ 4–6, 28–36, 43–45; Businessing Compl. ¶¶ 4–6, 28–36, 43–45); (2) that YouTube maintains a consent framework requiring creators to affirmatively opt in before third parties may use their YouTube content for AI training (*see* Ace Cam Compl. ¶¶ 37–42; Businessing Compl. ¶¶ 37–42); (3) that Runway compiled internal datasets identifying YouTube channels and videos for ingestion into its AI training pipeline (*see* Ace Cam Compl. ¶¶ 49–51; Businessing Compl. ¶¶ 49–51); (4) that Runway bypassed YouTube's TPMs through various methods including automated scraping tools (i.e., yt-dlp) and used methods to evade IP address blocking in order to obtain file-level copies of creators' videos (*see* Ace Cam Compl. ¶¶ 52–68, 74; Businessing Compl. ¶¶ 52–68, 74); and (4) that Runway used these scraped videos to train, develop, and improve its AI products without

authorization or consent. (*see* Ace Cam Compl. ¶¶ 46–47, 54–57, 69–72, 77–80, 81–89; Businessing Compl. ¶¶ 46–47, 54–57, 69–72, 77–80, 81–89). Moreover, the Plaintiffs are all YouTube content creators whose videos were illegally accessed and used by Runway (*see* Ace Cam Compl. ¶ 19; Businessing Compl. ¶ 19) and they bring overlapping claims for violations of 17 U.S.C. § 1201(a). *See* Ace Cam Compl. ¶¶ 101-10; Businessing Compl. ¶¶ 101-10. Finally, Plaintiffs propose overlapping classes under Federal Rules of Civil Procedure 23. *Compare* Ace Cam Compl. ¶ 93 with Businessing Compl. ¶ 93.

In addition to satisfying the primary requirement for consolidation (i.e. common questions of fact and law), all other relevant considerations weigh heavily in favor of consolidation. The two complaints have been filed recently and neither has proceeded to a point where consolidation would create undue delay or any prejudice. To the contrary, consolidation will result in the filing of a single consolidated operative complaint instead of two, as well as the briefing of a single motion to dismiss. Consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for cases arising from the same conduct, involving the same Defendant and putative classes, and presenting the same factual and legal issues. Trying the Related Actions separately would risk inconsistent findings and rulings.

Consolidation will also further the convenience of the Parties and witnesses. For example, Plaintiffs anticipate they will seek the production of substantially the same documents and will seek to depose the same individuals. Without consolidation, there will be duplicative discovery demands and overlapping, competing and (perhaps) inconsistent motion practice. Consolidation will solve these problems by enabling a single judge with all the parties present to formulate a pretrial plan that will minimize party and witness inconvenience and overall expense for all parties.

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 158 F.R.D. 562, 570 (S.D. N.Y. Nov. 28, 1994) ("Avoiding unnecessary paperwork is a proper reason to use a consolidated complaint for pretrial purposes."). Additionally, both Related Actions are filed in this District, obviating the need for transfers.

For these reasons, Plaintiffs request that the Related Actions be consolidated and that the matter titled *Ace Cam, Inc. v. Runway AI, Inc.*, Case No. 1:26-cv-01362-LAK be designated the lead case.

### B.  The Court Should Appoint Interim Co-Lead Class Counsel

Plaintiffs request that Tom Kherkher of Ellzey Kherkher Sanford Montgomery LLP ("EKSM") and Gary Klinger of Milberg, PLLC ("Milberg") be designated as Interim Co-Lead Class Counsel.

Under Rule 23(g)(3), a federal court presiding over a proposed class action may assign interim class counsel even before taking up the motion for class certification. *See* Fed. R. Civ. P. 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.") "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D. N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). In doing so, a court must consider the following: "(i) the work

counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2).

Here, as outlined below, Proposed Interim Co-Lead Class Counsel have been at forefront of development of cases of this type and have conducted a thorough investigation of the facts of this case.  Proposed Interim Co-Lead Class Counsel also possess extensive experience litigating complex class actions nationwide, and have the ability and willingness to provide the resources necessary to fully prosecute this action. Proposed Interim Co-Lead Class Counsel represent the combined experience, talents, and resources needed to "fulfill their obligations as advocates in a manner that will foster and sustain good working relations among fellow counsel and with the court." *See* Manual for Complex Litigation § 10.21 (4th ed. 2004).

1. *Counsels' Work Investigating The Claims*

Courts often consider the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same). Prior to filing their complaints, Proposed Interim Co-Lead Class Counsel each conducted their own thorough and independent investigation of the events that gave rise to this class action. Those investigations included, among other things:

- Investigating the facts surrounding Runway's conduct;
- Researching legal claims;
- Drafting initial pleadings; and
- Organizing Plaintiffs and their counsel and discussing consolidating the Related

Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

In addition to the joint efforts described above, Proposed Interim Co-Lead Class Counsel Tom Kherkher played a central role in originating and developing the core legal and factual theories underlying this litigation. For more than six months prior to filing suit, Mr. Kherkher conducted an extensive independent investigation into the methods by which AI developers obtained large volumes of copyrighted video content for use in training datasets. That investigation included reviewing technical research papers, analyzing publicly reported datasets used in AI training, and studying the technological protection measures implemented by YouTube to prevent automated downloading of protected video streams. Mr. Kherkher also communicated with investigative journalists who have reported extensively on the use of scraped video datasets for AI model training. These efforts developed the factual and technical framework underlying the DMCA claims asserted in this action, including theories concerning the circumvention of YouTube's TPMs. This substantial pre-filing investigation and early case development has also provided Plaintiff's counsel with a deep familiarity with the technical, factual, and legal issues that will drive this case and positions counsel to effectively prosecute the claims on behalf of the proposed class.

Given the number of people potentially affected by Runway's conduct, Proposed Interim Co-Lead Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Co-Lead Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Co-Lead Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead Class Counsel under Fed. R. Civ. P. 23(g)(3), as they are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### 2. *Counsel's Experience and Knowledge*

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. Proposed Interim Co-Lead Class Counsel have the experience and skill to prosecute this action efficiently and effectively. Interim Co-Lead Class Counsel formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service

as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

Proposed Interim Co-Lead Class Counsel have proven management and leadership capabilities, excellent and diverse legal skills, and importantly, thorough knowledge of the subject matters and issues critical to this case. Additionally, as set forth below, Proposed Interim Co-Lead Class Counsel have extensive experience litigating complex cases on behalf of millions of class members.

    a.   *Tom Kherkher of Ellzey Kherkher Sanford Montgomery LLP*

Tom Kherkher is a founding partner of EKSM, where he leads the firm's Artificial Intelligence Litigation Unit. In that role, Mr. Kherkher focuses on emerging technology disputes involving artificial intelligence, digital platforms, and large-scale online misconduct.

Prior to co-founding EKSM in 2024, Mr. Kherkher founded and operated the Kherkher Law Firm, PLLC where Mr. Kherkher recovered more than $50 million on behalf of clients in complex litigation matters involving personal injury, first-party insurance disputes, and products liability claims.

Since launching EKSM, Mr. Kherkher has expanded his practice into complex plaintiff-side litigation involving emerging technologies and large-scale misconduct. He is currently involved in numerous class actions and complex matters involving data breach and privacy violations, cryptocurrency fraud, antitrust violations, and artificial intelligence technologies. EKSM currently serves on the Plaintiffs' Executive Committee in *In re PayPal Honey Browser Extension Litigation*, pending in the United States District Court for the Northern District of California.

Mr. Kherkher also brings substantial subject matter expertise relating to the YouTube platform and the creator ecosystem directly implicated in this litigation. He operates a widely followed legal education YouTube channel, "Attorney Tom," which has approximately 550,000 subscribers and focuses on explaining legal issues to the public.[2] Through this work, Mr. Kherkher has developed extensive familiarity with YouTube's platform, its content distribution systems, and the concerns of creators whose video content is published on the platform. In addition, Mr. Kherkher represents numerous YouTube creators in other legal matters and regularly advises creators regarding the protection and use of their video content. This dual role as both a practicing attorney and an active participant in the YouTube creator ecosystem provides Mr. Kherkher with unique insight into the issues presented by the alleged use of YouTube videos in artificial intelligence training datasets.

As detailed above, Mr. Kherkher was instrumental in originating and developing the claims asserted in this litigation. For more than six months prior to filing suit, he conducted an extensive independent investigation into how artificial intelligence companies obtained large volumes of copyrighted video content for use in training datasets. That investigation included analyzing technical research papers, reviewing publicly reported AI training datasets, and studying the technological protection measures implemented by YouTube to prevent automated downloading of protected video streams.

As part of this investigation, Mr. Kherkher also communicated with investigative journalists who have reported extensively on the use of scraped video datasets for the training of generative AI models. These discussions, combined with his own technical research, helped

---

[2] Rebecca Brown, The Rise of Attorney Tom: How One Lawyer Captivated the Internet, Jellysmack Creator Blog (Apr. 7, 2023), https://blog.jellysmack.com/attorney-tom-creator-feature/

11

uncover the factual basis for the claims asserted in this case, including the circumvention of YouTube's technological protection measures in violation of the Digital Millennium Copyright Act.

Based on this work, Mr. Kherkher helped develop the legal and factual framework underlying the DMCA §1201 anti-circumvention claims asserted here and in related cases. He also filed some of the first lawsuits asserting these claims against artificial intelligence developers alleged to have used similar datasets to train generative models. This early investigative work helped establish the legal and factual foundation for this emerging area of litigation and positioned Mr. Kherkher to effectively lead the prosecution of the claims asserted on behalf of the proposed class.

Through this extensive pre-filing investigation and early case development, Mr. Kherkher has developed substantial familiarity with the technical architecture of YouTube's access-control mechanisms, the datasets used to train generative video models, and the legal issues surrounding the application of the DMCA's anti-circumvention provisions to artificial intelligence training practices.

While Mr. Kherkher's practice has historically focused on complex litigation outside the traditional class action space, he works closely with partners at EKSM who possess substantial experience prosecuting class actions and other complex aggregate litigation matters. Together, they bring the combined subject matter expertise, litigation experience, and resources necessary to effectively prosecute this case on behalf of the proposed class. EKSM's firm resume is attached as **Exhibit A.**

    b.  *Gary Klinger of Milberg, PLLC*

As a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice

Group, Mr. Klinger has devoted much of his practice to leading complex data privacy class action cases throughout the country. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by *Chambers and Partners* as Band 3 for Privacy & Data Security Litigation (2024)[3] and having been selected to *Lawdragon*'s 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[4] *Law360* recently highlighted Mr. Klinger's work in the privacy space.[5]

Mr. Klinger has always been at the forefront of cutting-edge lawsuits like this one. For example, Mr. Klinger was instrumental in bringing national attention to the unlawful disclosure of private health information through the use of online tracking technologies and analytics tools (e.g., the Meta Pixel), including by investigating and filing one of the first cases of its kind in the United States. *See Quinto v The Regents of the University of California*, Case No. 22-cv-012970 (Sup. Ct. Alameda Cty.) (complaint filed June 16, 2022). In the wake of that lawsuit, and due to Mr. Klinger's investigation, UCLA issued notice to more than 94,000 California consumers advising their private information had been unlawfully disclosed to third parties.[6] *See* https://www.uclahealth.org/data-notice (last visited Nov. 3, 2024).

---

[3] Only three plaintiffs' lawyers in the country received the distinction of being ranked by *Chambers and Partners* for Privacy & Data Security Litigation.

[4] *See Lawyer Profile of Gary Klinger,* Chambers and Partners, https://chambers.com/lawyer/gary-klinger-usa-5:26875006 (last visited Feb. 21, 2025); *The 2024 Lawdragon 500 Leading Litigators in America*, LAWDRAGON, (Sept. 8, 2023), https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[5] Anna Bongardino, *Rising Star: Milberg's Gary Klinger*, Law360, (July 14, 2024) https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

[6] In the wake of the *Quinto* lawsuit, the Department of Health and Human Services (DHHS) issued a bulletin on the requirements under HIPAA for online tracking technologies providing that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of ePHI to tracking technology vendors or any other violations of the HIPAA Rules." See *HHS Office for Civil Rights Issues Bulletin on Requirements under HIPAA for Online Tracking Technologies to Protect the Privacy and Security of Health Information*, Press Release, U.S. Department of Health & Human Services (Dec. 1, 2022) https://www.hhs.gov/about/news/2022/12/01/hhs-office-for-civil-rights-issues-bulletin-on-

13

Mr. Klinger has extensive experience serving as lead counsel in class actions, including in some of the largest cases in the country involving information technology, cyber security, and/or data privacy. *See, e.g.*, *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (appointed to the leadership committee in a multi-district litigation brought on behalf of more than 95 million consumers). He and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the information technology space. *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Mr. Klinger obtained a decision from the First Circuit reversing a dismissal with prejudice and finding Article III standing in an issue of first impression); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (defeated a motion to dismiss in a case alleging patients' highly sensitive personal information was unlawfully intercepted within the meaning of the Electronic Communications Privacy Act); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (defeated a motion to dismiss in a class action case involving 3 million consumers); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140) (where Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action in an issue of first impression before the Illinois appellate courts).

Over the past 3 years, Mr. Klinger has settled more than 100 class actions involving privacy violations on a classwide basis, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more privacy settlements during this period. Representative cases include:

- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (served on the leadership team that obtained a settlement of $600 million in a complex class action);
- *Parris, et al., v. Meta Platforms, Inc.*, Case No. 2023LA000672 (18th Cir. DuPage Cty., Ill.) (served as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);
- *Owens v. MGM Resorts International*, Case No. 23-cv-01480 (D. Nev.) (served as class

---

requirements-under-hipaa-for-online-tracking-technologies.html.

counsel and obtained a settlement of $45 million in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);
- *In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:2022-cv-00137 (N.D. Ill.) (served as lead counsel in a privacy class action involving 3 million consumers and reached a settlement of $21 million).[7]

Important to this case, Mr. Klinger has also successfully litigated class actions through class certification. *See, e.g.*, *Sewall v. Home Partners Holdings LLC*, No. A23-1662, 2024 WL 64318, at *1 (Minn. Ct. App. Jan. 2, 2024) (denying interlocutory review to an order granting class certification to a class of lessees in a landlord-tenant dispute); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).

In addition to his own achievements, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[8] Milberg has been instrumental in obtaining precedent-setting decisions at every level, including at the United States Supreme Court.[9] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg's firm resume is attached as **Exhibit B**

---

[7] The *Gallagher* settlement represents the largest settlement achieved in a data breach case in the Northern District of Illinois.

[8] *See, e.g.*, *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) ($4 billion settlement); *Daedalus, LLC v. City of Charlotte, Mecklenburg Co.,* File No. 18-CVS-21073 (NC) ($106 million settlement); *In re Actos End Payor Antitrust Litigation*, Case No. 1:13-cv-09244 (U.S. District Court for the Southern District of New York) ($2.4 billion settlement).

[9] *See Precedent Setting Decisions,* Milberg, Coleman Bryson Phillips Grossman, LLP, https://milberg.com/precedent-setting-decisions/page/3/ (last visited Feb. 21, 2025).

### 3. *Counsel's Resources*

The resources that Proposed Interim Co-Lead Class Counsel have already committed, and will continue to commit, to the case also strongly supports the appointment of Proposed Interim Co-Lead Class Counsel. As demonstrated above, Proposed Interim Co-Lead Class Counsel and their firms' resources are not merely financial, but also include the substantial experience and expertise gleaned from litigating many other class actions. Proposed Interim Co-Lead Class Counsel's ability to draw from this well-developed repository of information will allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Co-Lead Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the county. In fact, Proposed Interim Co-Lead Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm resumes and counsels' experience indicate, Proposed Interim Co-Lead Class Counsel have the resources and capacity to see this litigation through its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Co-Lead Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

### III.     CONCLUSION

As discussed above, consolidation is proper here because each Related Action: (i) is brought against the same Defendant; (ii) is based on the same alleged conduct; (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and legal claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources. In addition, Proposed Interim Co-Lead Class Counsel's work, experience, knowledge, resources, and successful track record litigating class actions demonstrate that they are superbly qualified to represent the proposed classes interests under the factors enumerated in Fed. R. Civ. P. 23.

For these reasons, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed action, *Ace Cam, Inc. v. Runway AI, Inc.*, Case No. 1:26-cv-01362-LAK; (2) appointing Mr. Kherkher and Mr. Klinger, as Interim Co-Lead Class Counsel; (3) staying the Related Actions, including the Defendant's responsive pleading deadlines, and (4) setting a deadline for the filing of a single Consolidated Complaint forty-five (45) days after the court's order consolidating the cases and appointing leadership. A proposed Order is attached.

DATED: March 11, 2026,               Respectfully submitted,

/s/  *Mark K. Svensson*
Mark K. Svensson (NY Bar No: 5974290)
Michael A. Acciavatti (*pro hac vice* forthcoming)
**MILBERG, PLLC**
405 East 50th Street, Suite 408
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com
macciavatti@milberg.com

Gary M. Klinger (*pro hac vice* forthcoming)
William J. Edelman (*pro hac vice* forthcoming)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
wedelman@milberg.com
gklinger@milberg.com

Jarrett Lee Ellzey (*pro hac vice forthcoming*)
Tom Kherkher (*pro hac vice forthcoming*)
Leigh S. Montgomery (*pro hac vice forthcoming*)
**ELLZEY KHERKHER SANFORD MONTGOMERY LLP**
4200 Montrose Street, Suite 200
Houston, TX 77006
Tel: (713) 244-6363
jellzey@eksm.com
tkherkher@eksm.com
lmontgomery@eksm.com

James E. Cecchi (*pro hac vice* forthcoming)
Kevin G. Cooper (*pro hac vice* forthcoming)
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Proposed Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated via electronic mail on this the 11th day of March 2026.

/s/ *Mark K. Svensson*
Mark K. Svensson