**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACE CAM, INC. and BUSINESSING LLC**,** each individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>    v.<br><br>RUNWAY, INC.,<br>          Defendant | Case No.: 1:26-CV-01362-LAK<br><br>**PLAINTIFFS' OPPOSITION TO RUNWAY'S MOTION TO DISMISS**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 4

  A.   The Digital Millennium Copyright Act and Section 1201(a). ........................... 4

  B.   Exemptions to Section 1201(a). .......................................................................... 5

  C.   YouTube's Technological Protection Measures ................................................. 6

  D.   Runway's Circumvention of YouTube's Access Restrictions............................ 7

III.  LEGAL STANDARD.............................................................................................. 9

IV.   ARGUMENT........................................................................................................... 9

  A.   Plaintiffs Plausibly Allege Circumvention of Access Controls Under Section 1201(a). ... 9

    1.   Whether YouTube's TPMs Are Access Controls Is a Fact-Bound Question Not Properly Resolved at the Pleading Stage ........................................................ 11

    2.   Runway Rewrites "Controls Access" Into an All-or-Nothing Standard the Statute Does Not Require ..................................................................................... 11

    3.   Runway's Access-Control/Copy-Control Dichotomy Is Not the Law ......................... 15

    4.   Section 1201(a) Creates a Standalone Anti-Circumvention Claim .............................. 16

  B.   Runway Cannot Escape § 1201 Liability by Recasting Protected YouTube Videos as Publicly Accessible ................................................................................. 17

    1.   Plaintiffs Did Not Surrender Their § 1201 Rights By Uploading To YouTube. .......... 17

    2.   Access To Plaintiffs' Works Includes Access To The Underlying Digital Files Embodying Them.......................................................................................... 20

  C.   The Complaint Plausibly Alleges That YouTube's Technological Measures Control Access To Plaintiffs' Works ...................................................................... 23

    1.   The Complaint Alleges That Each Of The Five Measures Controls Access, And That Four Cut Off Access Entirely. ..................................................................... 24

    2.   Sustaining Plaintiffs' 1201(a) Claim Creates No "End-Run" Around The Copyright Act And Poses No Threat To Fair Use. ....................................................... 28

  D.   Plaintiffs Need Not Own or Operate YouTube's TPMs to Invoke § 1201 ....................... 29

V.    CONCLUSION......................................................................................................... 29

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)................................................................................. 11, 12

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)...................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................... 11, 26, 29

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
    381 F.3d 1178 (Fed. Cir. 2004) ................................................................................ 14

*Cordova v. Huneault*,
    817 F. Supp. 3d 819 (N.D. Cal. 2026) ..................................................... 3, 15, 20, 27

*Digital Drilling Data Sys., LLC v. Petrolink Serv's, Inc.*,
    965 F. 3d 365 (5th Cir. 2020) ................................................................................... 21

*Dish Network L.L.C. v. World Cable Inc.*,
    893 F. Supp. 2d 452 (E.D.N.Y. 2012) ...................................................................... 29

*Disney Enterprises,Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ............................................................................. passim

*Echostar Satellite, L.L.C. v. Viewtech, Inc.*,
    543 F. Supp. 2d 1201 (S.D. Cal. 2008)..................................................................... 30

*Edland v. Basin Elec. Power Coop.*,
    2021 WL 3080225 (D.S.D. July 21, 2021) ............................................................... 15

*Einhorn v. Megatroyd Productions*,
    426 F. Supp. 2d 189 (S.D.N.Y. 2006)....................................................................... 21

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011)........................................................................................ 11

*Feingold v. RageOn, Inc.*,
    472 F. Supp. 3d 94 (S.D.N.Y. 2020)......................................................................... 21

*Green v. United States Dep't of Just.*,
    111 F.4th 81 (D.C. Cir. 2024)............................................................................. passim

*Hattler v. Ashton*,
  2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ........................................................................ 19

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ................................................................................................ 15

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
  307 F. Supp. 2d 521 (S.D.N.Y. 2004) ............................................................................... 29, 30

*Justice v. Uncharted Labs, Inc.*,
  2026 WL 1430232 (S.D.N.Y. May 21, 2026) ...................................................................... 3, 13

*Lemus-Escobar v. Bondi*,
  158 F.4th 944 (9th Cir. 2025) ................................................................................................ 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ..................................................................................... 15, 16, 21

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015) ...................................................................................... 16

*London-Sire Records, Inc. v. Doe 1*,
  542 F. Supp. 2d 153 (D. Mass. 2008) ..................................................................................... 23

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014) ................................................................................................... 11

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010) ........................................................................................... passim

*Sony Music Ent. v. Uncharted Labs, Inc.*,
  2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) ........................................................ 3, 13, 18, 28

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
  306 F. Supp. 3d 1164 (C.D. Cal. 2018) .................................................................................. 28

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) .................................................................................. 28

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001) ................................................................................................... 12

*UMG Recordings, Inc. v. Kurbanov*,
  2021 WL 6492907 (E.D. Va. Dec. 16, 2021) .......................................................................... 27

*U.S. v. Elcom Ltd.*,
   203 F. Supp. 2d 1111 (N.D. Cal. 2002) ................................................................... 30

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001)............................................................................... passim

*Universal City Studios, Inc. v. Reimerdes*,
   111 F. Supp. 2d 294 (S.D.N.Y. 2000)............................................................... 14, 19

*Van Buren v. United States*,
   593 U.S. 374 (2021)................................................................................................ 15

*Viral DRM LLC v. Seven W. Media, Ltd.*,
   768 F. Supp. 3d 1025 (N.D. Cal. 2025) ................................................................. 30

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
   633 F. Supp. 3d 650 (D. Conn. 2022).............................................................. passim

## Statutes

17 U.S.C. § 101................................................................................................... 21, 23

17 U.S.C. § 1201............................................................................................... passim

17 U.S.C. § 1201(a) .......................................................................................... passim

17 U.S.C. § 1201(a)(1)........................................................................................ 1, 2, 14

17 U.S.C. § 1201(a)(1)(A) .................................................................................. 3, 4, 12

17 U.S.C. § 1201(a)(1)(C) ........................................................................................... 8

17 U.S.C. § 1201(a)(2)............................................................................................... 14

17 U.S.C. § 1201(a)(3)(A) ...................................................................................... 7, 12

17 U.S.C § 1201(a)(3)(B) ........................................................................... 2, 7, 12, 27

17 U.S.C. § 1201(b) ......................................................................................... 6, 16, 17

17 U.S.C. § 1201(d) ..................................................................................................... 7

17 U.S.C. § § 1201(e)-(j) ............................................................................................. 8

iv

**Regulations**

37 CFR pt. 201 ................................................................................................................... 24

37 CFR 201.40(b)(1)(i)–(ii) ................................................................................................. 8

37 CFR 201.40(b)(1)(ii)(A) ............................................................................................... 24

37 CFR 201.40(b)(3) ..................................................................................................... 8, 18

37 CFR 201.40(b)(4)–(5) ..................................................................................................... 8

## I.    <u>INTRODUCTION</u>

The Digital Millennium Copyright Act prohibits circumventing technological measures that effectively control access to copyrighted works. 17 U.S.C. § 1201(a)(1). Congress enacted the DMCA to serve as "the legal platform for launching the global digital on-line marketplace for copyrighted works." S. Re No. 105-190, at 8 (1998); *see also* H.R. Re No. 105-551(I), at 9 (1998). Recognizing that, given the ease of digital copying, "copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy," S. Re No. 105-190, at 8, Congress enacted Section 1201 to "back[] with legal sanctions the efforts of copyright owners to protect their works from piracy behind digital walls such as encryption codes or password protections." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001).

YouTube is one of the crowning achievements of that thriving electronic marketplace. YouTube deploys a suite of technological protection measures ("TPMs")—a rolling cipher, session-bound URLs, IP blocking, CAPTCHA challenges, and proof-of-origin tokens—that are digital walls designed to prevent anyone from reaching the raw digital files that sit on YouTube's servers, and to keep certain users, like bots and scrapers, off the platform altogether. These measures do not merely prevent copying in the colloquial sense; they prevent access to the digital files themselves. Without circumvention, a user cannot obtain, locate, or retrieve the underlying audiovisual data.

Creators, like Plaintiffs, rely on YouTube to display their works, trusting that YouTube's TPMs will protect their content from unauthorized access and exploitation. Plaintiffs are among the countless creators depending on the protections provided by Section 1201(a). They upload their original audiovisual works to YouTube, earn revenue through its ad-supported streaming platform, and rely on YouTube's host of TPMs to act as a lock.

Defendant, Runway AI, Inc., ("Runway") picked those locks to extract the underlying files so they could be fed into Runway's AI training pipeline. *See* ECF No. 33, Plaintiffs' Consolidated Class Action Complaint ("Compl."), at ¶¶ 5–6, 87. As Plaintiffs allege, Runway used automated stream-ripping tools to systematically bypass YouTube's digital walls and gain unauthorized access to the data files underlying Plaintiffs' works and thousands of others, then reproduced and stored those files in Runway-controlled datasets for AI training. *Id*. at ¶¶ 78–83, 87, 91–108. The Complaint identifies Runway's tool by name: yt-dlp, an automated downloader that the pleading describes as a "bootleg key for the lock imposed by YouTube's rolling cipher." *Id*. at ¶¶ 81, 96–98. The allegations amount to straightforward circumvention of an access control under 17 U.S.C. § 1201(a)(1).

The central premise of Runway's Motion to Dismiss ("Mot.") is that a rightsholder relinquishes all Section 1201(a) protection once it makes its work viewable to the public in any form. But that premise cannot be squared with the language of the statute, which protects measures that "control[] access," not only measures that prevent every conceivable form of access. 17 U.S.C. § 1201(a)(1)(A), (a)(3)(B). The argument has also been routinely rejected by nearly every court that has encountered it. *See e.g., Sony Music Ent. v. Uncharted Labs, Inc.*, 2026 WL 1019199, at *3 (S.D.N.Y. Apr. 15, 2026); *Justice v. Uncharted Labs, Inc.*, 2026 WL 1430232, at *2–3 (S.D.N.Y. May 21, 2026); *Cordova v. Huneault*, 817 F. Supp. 3d 819, 832–35 (N.D. Cal. 2026). And the Second Circuit has long held that authorization to access a work in one form is not authorization to circumvent the controls that govern access in another. *Corley*, 273 F.3d at 444.

Runway next argues that a TPM must be classified as either an "access control" or a "copy control." This false dichotomy has no footing in the statute, which nowhere provides that a single measure cannot do both. That very argument was also rejected by the Ninth Circuit rejected in

2

*Disney Enterprises, Inc. v. VidAngel, Inc.*, which held that "the statute does not provide that a TPM cannot serve as both an access control and a use control." 869 F.3d 848, 865 (9th Cir. 2017). The statute's text "does not suggest that a defendant could not violate both § 1201(a)(1)(A), by circumventing an access control measure, and § 106, by . . . reproducing . . . the accessed work." *Id*. To the contrary, circumventing a measure that controls access to the underlying files while also restricting their reproduction is actionable under Section 1201(a), regardless of what the circumventor intended to do with the files once it broke through.

Runway then argues that Plaintiffs are impermissibly repackaging a copyright infringement claim as a DMCA claim. This argument ignores that Section 1201(a) creates a distinct anti-circumvention right with its own elements—one that neither requires copyright registration nor is answered by a fair-use defense. At bottom, Runway seeks a judicial exemption for its conduct that Congress did not write and that the triennial rulemaking process has repeatedly declined to grant. Its efforts to obtain by judicial rewriting what it has failed to pursue through the proper regulatory channel should be rejected.

Finally, Runway argues that Plaintiffs cannot state a claim under the DMCA because they are not the owners or operators of the TPMs at issue. This argument imposes a false requirement and avoids caselaw directly rejecting that supposed requirement.

Plaintiffs plausibly allege that (1) their works are protected by technological measures that effectively control access to those works, and (2) Runway circumvented those measures to access Plaintiffs' works. These allegations readily satisfy Rule 8(a). Runway's inquiries into the detailed mechanics of YouTube's TPMs and the precise manner of Runway's circumvention are, at most, fact questions better left for discovery, summary judgment, and trial. The Court should DENY Runway's motion to dismiss.

## II.    BACKGROUND

### A.    The Digital Millennium Copyright Act and Section 1201(a).

The DMCA was a response to the Internet's rapid growth. Congress enacted the DMCA to "create[] the legal platform for launching the global digital online marketplace for copyrighted works" and to "facilitate making available quickly and conveniently via the Internet the movies, music, software, and literary works that are the fruit of the American creative genius." S. Re No. 105-190, at 8; *see also* H.R. Re No. 105-551(I), at 9 (the DMCA is "intended to ensure a thriving electronic marketplace for copyrighted works on the Internet"). However, Congress understood that the Internet's vast potential as a distribution channel for creative works could not be realized if rightsholders feared that "massive piracy" would render digital distribution economically unviable. S. Re No. 105-190, at 8. Without those assurances, Congress understood, "copyright owners [would] hesitate to make their works readily available on the Internet." *Id.*

As a result, Section 1201 was born. The DMCA "backed with legal sanctions copyright owners' use of digital walls to protect their copyrighted works from piracy." *Green v. United States Dep't of Just.*, 111 F.4th 81, 89 (D.C. Cir. 2024) (cleaned up). Those walls, called TPMs, limit both the use of and access to copyrighted works. *Id.* Section 1201 prohibits (1) circumventing a TPM that "controls access" to a copyrighted work 17 U.S.C. § 1201(a)); and (2) trafficking in a technology designed to circumvent a TPM that "protects a right of a copyright owner" (*id.* § 1201(b)). These provisions are not mutually exclusive—Congress did not pass any language rendering them so, and the Ninth Circuit has explicitly stated that they are not. *VidAngel,* 869 F.3d at 864 ("[Section 1201] does not provide that a TPM cannot serve as both an access control and a use control[.]").

The conduct at issue in this case falls under Section 1201(a), known as the "anticircumvention provision". To state a claim under Section 1201(a), Plaintiffs need only plead

that access to their work is protected by an effective technological measure—which is defined as a measure that "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(A). Next, Plaintiffs must plead that Runway circumvented the relevant technological measure—which is defined as "descrambl[ing] a scrambled work, . . . decrypt[ing] an encrypted work, or otherwise . . . avoid[ing], bypass[ing], remov[ing], deactivat[ing], or impair[ing] a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(B).

### B.    Exemptions to Section 1201(a).

In enacting Section 1201(a), Congress implicitly recognized that the First Amendment does not "guarantee potential fair users unfettered or privileged access to copyrighted works they seek to use in their own expression." *Green*, 111 F.4th at 98. At the same time, Congress understood that Section 1201(a) had the potential to prohibit certain noninfringing fair uses of copyrighted material. H.R. Re No. 105-551 (II), at 35–36. For this reason, the anticircumvention provision is subject to specific statutory and regulatory exemptions. *Green*, 111 F.4th at 89–90.

Section 1201 itself provides exemptions, such as an exemption allowing nonprofit libraries to overcome technological controls to gain access to copyrighted works "solely in order to make a good faith determination of whether to acquire a copy of th[e] work" that is not otherwise reasonably available.  17 U.S.C. § 1201(d). Other exemptions in the statute itself include law enforcement and governmental activities, encryption research, security testing, and circumvention for the sole purpose of preventing collection of a user's personally identifying information. *Id.* § 1201(e)-(j).

Congress also created a triennial rulemaking process to accommodate changes in technology. Under Section 1201(a)(1)(C), the Librarian of Congress grants exemptions to those likely to be "adversely affected" by the anticircumvention provision in their ability to make

noninfringing uses. *Green*, 111 F.4th at 90. Current exemptions include, among others, excerpts of motion pictures for criticism and comment and for educational purposes, (codified at 37 CFR 201.40(b)(1)(i)–(ii)); preservation of audiovisual works on damaged or deteriorating media by libraries, archives, and museums, *id.* at 85,440/3 (codified at 37 CFR 201.40(b)(3)); and text and data mining of motion pictures and literary works for scholarly research and teaching, *id.* at 85,440/4–5 (codified at 37 CFR 201.40(b)(4)–(5)). This rulemaking process enables noninfringing fair use while providing "reasonable assurance" to copyright owners that they will be protected against piracy. S. Re No. 105-190, at 8; *see also Green*, 111 F.4th at 98.

###### C.    YouTube's Technological Protection Measures

YouTube, one of the world's largest online streaming platforms, is perhaps the most potent example of how the careful balance struck by Section 1201(a) has helped foster the "thriving electronic marketplace" that Congress intended. Rightsholders can upload a diverse range of content to YouTube for streaming, including short-form and long-form films, music videos, movie clips, livestream content, and news. Once uploaded, rightsholders—ranging from major film studios and music labels to independent creators like Plaintiffs—are then able to rely on YouTube's ad-supported streaming service for revenue. *See* Compl. ¶¶ 18–21, 61–63, 110, 112–15. Central to YouTube's appeal for rightsholders is the control they retain through the platform's content-sharing process. Rightsholders can upload content for public streaming via YouTube's authorized, ad-supported playback mechanism while simultaneously retaining control over the way their content is accessed and used. *Id.* at ¶¶ 2–3, 7–9, 29–38, 60–68, 110, 140–45, 149.

While YouTube allows users to *stream* content, YouTube also deploys a suite of strict TPMs that control access to content. *Id.* at ¶¶ 2–4, 29–40, 44–59, 140–42. YouTube's TPMs are designed to prevent users from doing anything other than viewing content on the platform and those measures technologically limit other uses, such as downloading the audiovisual content for

6

off platform use. *Id.* at ¶¶ 29–38, 60–68, 91–94, 140–42, 149. The TPMs deployed by YouTube include: rolling cipher technology, session-bound URLs, IP-based controls, CAPTCHA challenges, and proof-of-origin tokens. *Id.* at ¶¶ 39, 44–59, 95–108, 140–42, 150. These TPMs regulate access to audiovisual works hosted on YouTube's servers and prevent unauthorized users, bots, and scrapers from reaching and extracting the underlying audiovisual files outside YouTube's authorized playback environment. *Id.* at ¶¶ 2–4, 29–40, 44–59.

### D.   Runway's Circumvention of YouTube's Access Restrictions

Runway deliberately circumvented YouTube's TPMs to gain unauthorized access to the underlying data files that are otherwise inaccessible to the public. *Id.* at ¶¶ 4–6, 41–43, 69, 73, 78–83, 91–108, 146–49, 152–54.

In order to build, train, and commercialize its generative AI video models, Runway needed massive amounts of high-quality video data and, rather than license that content from creators, it targeted YouTube as a source of training material. *Id.* at ¶¶ 69–74. Plaintiffs allege that Runway publicly avoided disclosing the sources of its training data, describing its data only as "curated, internal datasets." *Id.* at ¶ 74. But investigative reporting later revealed an internal Runway spreadsheet cataloging thousands of YouTube channels and videos selected for use in Runway's AI training pipeline. *Id.* at ¶¶ 75–77. According to the Complaint, the leaked internal spreadsheet identified approximately 3,968 YouTube channels and more than 100,000 videos, reflecting a coordinated effort to identify, categorize, and curate YouTube content for ingestion into Runway's training systems. *Id.* at ¶¶ 75–77. The spreadsheet included major media companies, entertainment brands, and independent creators, including Plaintiffs. *Id.* at ¶¶ 75–78.

The Complaint also alleges how Runway obtained that content. *Id.* at ¶¶ 78–83. Former employees described Runway's use of large-scale crawlers and proxy networks to rotate IP addresses so that Runway could avoid being detected and blocked by YouTube. *Id.* at ¶¶ 78–80.

7

Runway also allegedly used open-source tools, including yt-dlp. *Id*. at ¶¶ 5, 78–83, 95–104, 106–08, 146–47, 154. Yt-dlp is an open-source tool commonly used for "stream ripping," a process that involves automatically accessing audio and video files directly from a website's servers rather than viewing content through the provider's authorized playback environment. *Id*. at ¶¶ 58, 81, 91–98. Specifically, yt-dlp automates stream ripping by defeating YouTube's rolling cipher and extracting the underlying media files directly from YouTube's servers. *Id*. at ¶¶ 44–46, 58, 81, 95–98. IP rotation involves the use of virtual machines to intentionally rotate IP addresses to bypass YouTube's IP blocking and monitoring systems. *Id*. at ¶¶ 5, 47–49, 53–55, 78–80, 99–104, 106–07. In other words, the whistleblower reporting revealed that Runway identified YouTube videos for training, then used circumvention tools and infrastructure to obtain file-level copies that YouTube's TPMs were designed to prevent. *Id*. at ¶¶ 75–83, 91–108.

Runway invokes (Mot. at 6-7) YouTube's Terms of Service (ECF No. 36-2) ("TOS") which grant *Google* a "worldwide, non-exclusive, royalty-free" license to use Content. But there is no dispute that Runway is not Google, not affiliated with Google, and was not granted any license itself under the TOS. In its TOS, YouTube defines "affiliates" to mean parent and subsidiary organizations within the Alphabet Inc. corporate group, which Runway does not purport to be nor does it assert that it can be advantaged by such licenses or permissions.[1] YouTube's TOS are clear: regular users can view videos on its platform (Compl. ¶ 29) and premium users can download videos to be played within YouTube's structured environment (*Id*. at ¶ 67), but YouTube

---

[1] *See* TOS at 3 ("References to YouTube's "Affiliates" in these terms means the other companies within the Alphabet Inc. corporate group (now or in the future)."). YouTube's Terms of Service clearly differentiate the rights granted to YouTube from the rights the TOS grants to users or affiliates. For example, YouTube's terms state that content creators "grant to YouTube the right to monetize . . . Content on the Service," but does not grant that right to affiliates. TOS at 10.

users are not granted any rights or permissions to access and make use of the underlying audiovisual files for Plaintiffs' content. *See Id.* at ¶ 61.[2]

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In applying that standard, the Court must "accept all factual claims in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014); *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The Complaint's factual allegations need only "raise a right to relief above the speculative level" and make the claim plausible. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (cleaned up). And where the pleaded facts support competing plausible inferences, "[t]he choice between two plausible inferences" is not one for the Court to make on a motion to dismiss. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Nor may the Court resolve "fact-specific question[s]" on the pleadings. *Id.* (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)).

## IV.    ARGUMENT

### A.    Plaintiffs Plausibly Allege Circumvention of Access Controls Under Section 1201(a).

The only "sleight-of-hand" (Mot. at 10) here is Runway's attempts to rewrite the text of Section 1201(a). Runway contends that the TPMs alleged in the Complaint are "copy controls" rather than "access controls." Mot. at 10–16. That argument fails for four independent reasons.

---

[2] Runway also suggests that it would be somehow unfair to allow Google to train its AI on YouTube content, while Runway has no such right. *See* Mot. at 4. This is a non-sequitur because YouTube has actually provided creators, individuals, and businesses something of value in the form of the YouTube platform and attendant advertising revenues—Runway, by contrast, has done nothing other than seek to profit off of Plaintiffs' and class members' content.

*First*, it asks the Court to resolve factual questions about how YouTube's technical measures operate before discovery. *Second*, it rests on an artificially narrow reading of Section 1201(a). *Third*, it depends on a false dichotomy that a technological measure can only be either an access control or a copy control, but never both. And *fourth*, Runway's attempt to transform Plaintiffs' DMCA claims into copyright infringement is a red herring.

Section 1201(a) prohibits circumventing "a technological measure that effectively ***controls access*** to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A) (emphasis added). A technological measure "effectively controls access" when, "in the ordinary course of its operation," it requires "the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C § 1201(a)(3)(B). And "circumvent" broadly includes "descrambl[ing] a scrambled work," "decrypt[ing] an encrypted work," or otherwise "avoid[ing], bypass[ing], remov[ing], deactivat[ing], or impair[ing] a technological measure, without the authority of the copyright owner." 17 U.S.C § 1201(a)(3)(A).

The Complaint alleges that YouTube deploys a suite of TPMs—including rolling cipher technology, session-bound URLs, IP-based controls, CAPTCHA challenges, and proof-of-origin tokens—that regulate access to audiovisual works hosted on YouTube's servers and prevent unauthorized users, bots, and scrapers from reaching and extracting the underlying video files outside YouTube's authorized playback environment. Compl. ¶¶ 2–4, 29–40, 44–59. Plaintiffs further allege that Runway used automated tools and stream-ripping methods to avoid or bypass those technical restrictions, retrieve the underlying audiovisual files, and store them in Runway-controlled systems for AI training. *Id*. at ¶¶ 78–83, 91–98, 104–08, 120, 122. Those allegations plausibly state circumvention of access controls under Section 1201(a).

### 1. Whether YouTube's TPMs Are Access Controls Is a Fact-Bound Question Not Properly Resolved at the Pleading Stage

*First*, whether YouTube's measures are access controls cannot be resolved on a motion to dismiss. Runway improperly asks the Court to decide, on the pleadings and against Plaintiffs, a fact-bound question that Court's in this District have recently declined twice to resolve on materially identical allegations. In *Sony Music*, an artificial-intelligence developer that stream-ripped YouTube videos argued, just as Runway argues here, that YouTube's rolling cipher was a copy control and that the plaintiffs had not pleaded circumvention of an access control. 2026 WL 1019199, at \*3. The court denied dismissal, stating:

> [T]he Court cannot resolve the statutory question at this stage …[The complaint] plausibly alleges that YouTube employs technological measures that regulate access to its content and that Defendant circumvented them under the pleading standard set by Rule 8(a). . . . Whether YouTube's measures ultimately constitute access controls within the meaning of § 1201 requires a greater factual record than the pleadings contain.

*Id*. The same court reached a parallel result, on the same theory, five weeks later. *See Justice*, 2026 WL 1430232, at \*2–\*3. These decisions postdate *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 664–72 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.), were rendered with the access-control/copy-control distinction squarely in view, and confirm that dismissal on this basis is inappropriate.

### 2. Runway Rewrites "Controls Access" Into an All-or-Nothing Standard the Statute Does Not Require

*Second*, Runway's attempt to rewrite the statute, namely replacing the statutory phrase "controls access" with the much narrower requirement that a TPM must "prevent" every form of access, should be rejected. Mot. at 11-13.[3] Congress did not write the statute that way. Section

---

[3] While *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 316 (S.D.N.Y. 2000) may recite some of the language and history of Section 1201(a)(1), it is a claim brought under Section 1201(a)(2)

1201(a) asks whether a technological measure controls access to the work in the ordinary course of its operation—not whether it makes every encounter with the work impossible. *See Yout*, 633 F. Supp. 3d at (holding that "controls access" is broader than "prevents access"). The Ninth Circuit has also explained, an access control need not be "strong or circumvention-proof"; it need only provide "some degree of control over access to a copyrighted work." *MDY Indus.,* 629 F.3d at 954 n.17.

Plaintiffs allege that YouTube permits streaming through its authorized playback environment, while restricting direct file-level retrieval, off-platform access, automated bulk extraction, and other forms of unauthorized technical access Runway is alleged to have accomplished here. Compl. ¶¶ 29–38, 60–68, 91–94. Public streaming through YouTube's controlled architecture does not equal unrestricted access to the underlying audiovisual files on YouTube's servers. Rather, Plaintiffs authorized YouTube to make their videos available for platform streaming, subject to YouTube's technical measures and contractual limitations. *Id*. at ¶¶ 9, 29, 31–38, 60–68, 110. They did not authorize Runway to bypass those restrictions and obtain bulk file-level copies for commercial AI training. *Id*. at ¶¶ 5–6, 10, 69–83, 87–90, 109.

That is why Runway's repeated emphasis on the fact that YouTube videos can be viewed by the public rings hollow. Section 1201(a) does not require Plaintiffs to allege that no member of the public can view their videos in any form. It only requires Plaintiffs to allege that Runway

---

because defendant there was not alleged to have circumvented plaintiffs' access controls at all. Because of this, it has no bearing on the issues in this case.

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004) also does not help Runway. *Chamberlain's* "infringement nexus" requirement, has been rejected by the Ninth Circuit in *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 948 (9th Cir. 2010) which held instead that § 1201(a) creates a new anti-circumvention right distinct from copyright infringement. Thus, it is enough to allege unauthorized circumvention of a technological measure that effectively controls access to a protected work, which is what Plaintiffs have done here.

12

circumvented a technological measure that controlled access to the works. The Second Circuit is clear—permission from the copyright owner for one act does not provide permission for all acts. *Corley*, 273 F.3d at 444. That is, authorization to view a video does not equate to authorization to circumvent technological protections in order to reproduce and train AI on it. *Id*. ("Defendants offered no evidence that the Plaintiffs have either explicitly or implicitly authorized DVD buyers to circumvent encryption technology to support use on multiple platforms.").

Courts have rejected Runway's public-viewability argument in materially similar contexts. *See Yout*, 633 F. Supp. 3d at 664–72 (rejecting the argument that YouTube's measures cannot qualify as access controls merely because videos are viewable); *Cordova*, 817 F. Supp. 3d at 832–35 (rejecting argument that public viewability defeated a Section 1201 claim where the plaintiff alleged circumvention of YouTube access controls); *Edland v. Basin Elec. Power Coop.*, 2021 WL 3080225, at *6 (D.S.D. July 21, 2021) (declining to dismiss a Section 1201 claim based on circumvention of controls restricting access to video content).

This is also why Runway's reliance on CFAA cases to argue that access must be "all-or-none" and that public websites, by their very virtue of being public, have no access limitations is misplaced. Mot. at 12-13.[4] Both *Van Buren v. United States*, 593 U.S. 374 (2021); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) addressed the Computer Fraud and Abuse Act, not Section 1201, and neither involved analyzing the DMCA's specific statutory definition of an

---

[4] Runway's authority *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 546–47 (6th Cir. 2004) (Mot. at 12, 24) is distinguishable because it involved software code that was freely readable without encountering any alleged TPM (*see Id*. at 549 (the DMCA "turns on the textual requirement that the challenged circumvention device must indeed circumvent *something,* which did not happen…")), and did not involve allegations that the works could only be accessed, in the form accessed by defendant, through an authorized method or means and that defendant bypassed those measures (i.e., YouTube's authorized playback environment) to reach underlying audiovisual files. Further, Runway's reliance on *Lexmark* for the proposition that "streaming media" is always a copy control is misplaced. Again, *Lexmark* did not involve YouTube or the file-level measures alleged here, and to the extent it could be read to adopt the categorical dichotomy Runway urges, it cannot be reconciled with *Corley* or *VidAngel*.

access-control TPM. The CFAA addresses unauthorized access to computer systems while Section 1201(a) addresses circumvention of technological measures that control access to copyrighted works. Those are different statutes, with different texts, purposes, different statutory definitions, and restricting access to completely different things. Therefore, *Van Buren* and *hiQ* are not applicable here because the relevant question is not whether Runway could visit YouTube's public website and watch Plaintiffs' videos, the relevant question is whether YouTube's TPMs required the application of information, a process, or a treatment to access the underlying audiovisual files, and whether Runway avoided or bypassed those measures to obtain access in a manner YouTube's system did not authorize.

Runway's statutory-structure argument states the obvious. Section 1201(b) addresses trafficking in technologies that circumvent measures protecting rights of copyright owners, while Section 1201(a) prohibits the act of circumventing technological measures that control access.[5] Plaintiffs do not dispute that Section 1201 distinguishes between access controls and copy controls. But Plaintiffs have plainly alleged that Runway avoided or bypassed YouTube's TPMs to obtain access to Plaintiffs' audiovisual works in a form and manner different from YouTube's authorized streaming environment (*see* Compl. ¶¶ 4–6, 31–43, 80–83, 91–98, 104–08, 146–49) which is exactly the type of conduct Section 1201(a) reaches. *See VidAngel*, 869 F.3d at 863–65.[6]

---

[5] The types of conduct laid out as exemplars of DMCA violations by the court in *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501 (S.D.N.Y. 2015) (such as "DVD encryption measures, and activation and validation keys") are simply that—examples of the type of activity that could constitute a violation, but not an exhaustive list. *Id*. at 510–11. The case is also distinguishable because there the court held that plaintiff failed to allege the specific measures defendant circumvented through the alternative "plaintiff mimicking" allegations. *Id*. at 511. That is unlike the case here, where Plaintiffs allege five distinct TPMs and detail how each is an access control that Runway circumvented. *See* Compl. ¶¶ 39–59, 91–108.

[6] Similarly, Runway's hypothetical concern about double recovery is irrelevant. Plaintiffs assert a claim under Section 1201(a), not Section 1201(b), and allege that YouTube's TPMs function as access controls. Thus, denying Runway's motion would not create any risk of duplicative recovery for simultaneous violations of Sections 1201(a) and 1201(b), because Plaintiffs do not assert both claims.

14

### 3.    Runway's Access-Control/Copy-Control Dichotomy Is Not the Law

*Third*, Runway's contention that measures can only be "access controls" or "copy controls" is wrong. Mot. at 13-14. A single technological measure can control access and restrict copying at the same time. Runway's contrary framing has no footing in the statute and is foreclosed by controlling Second Circuit authority.

Section 1201(a)(1)(A) prohibits circumventing "a technological measure that effectively controls access to a work." The provision says nothing about the circumventor's purpose, and it does not condition liability on what a circumventor does with content after circumventing. The Second Circuit has held that § 1201(a) reaches conduct occurring "before the work was even copied," targeting "those pirates who would circumvent these digital walls," and that the anti-circumvention right "does not concern itself with the use of those materials after circumvention has occurred." *Corley*, 273 F.3d at 435. That a defendant circumvents an access control in order to copy the underlying work is therefore beside the point. The circumvention is itself the violation.

It follows that one measure can do double duty. Rejecting the precise argument Runway presses here, the Ninth Circuit held:

> [Section 1201] does not provide that a TPM cannot serve as both an access control and a use control . . . . [I]ts text does not suggest that a defendant could not violate both § 1201(a)(1)(A), by circumventing an access control measure, and § 106, by, for example, reproducing . . . the accessed work.

*VidAngel,* 869 F.3d at 865; Similarly, in *MDY*, the court explained that where "a copyright owner puts in place an effective measure that both (1) controls access and (2) protects against copyright infringement, a defendant who traffics in a device that circumvents that measure could be liable under both § 1201(a) and (b)." 629 F.3d at 946. The court in *Sony Music* applied that principle directly to YouTube's measures, accepting as plausible that a measure "can qualify as both an access control and a copy control." 2026 WL 1019199, at *3.

15

Congress's own regulatory framework confirms the point. The Copyright Office has adopted exemptions that authorize circumventing access controls for the very purpose of copying, including a preservation exemption. *See* 37 C.F.R. § 201.40(b)(3). *See also supra*. § II.B. Each exemption necessarily entails reproducing the works. If, as Runway insists, a measure circumvented in order to copy were a copy control beyond § 1201(a), these access-control exemptions would be superfluous.[7]

Plaintiffs clearly allege that YouTube's TPMs control access to the underlying audiovisual files and prevent unauthorized file-level retrieval. Compl. ¶¶ 2–4, 29–40, 44–59, 140–42, 149. Runway's alleged circumvention of those measures to obtain the files is therefore actionable under Section 1201(a), even if the circumvention also enabled copying. A measure does not lose access-control status simply because the defendant's ultimate objective was to copy what it accessed because the defendant still violated Section 1201(a) by circumventing the TPM in the first place.

### 4. Section 1201(a) Creates a Standalone Anti-Circumvention Claim

*Fourth and finally*, Runway suggests that Plaintiffs are attempting to shoehorn a copyright infringement dispute into a DMCA claim in order to evade copyright law requirements and defenses, including fair use. Mot. at 15-16.[8] But Section 1201(a) creates a separate anti-

---

[7] To the extent Runway leans on the Copyright Office's 2017 Section 1201 Report to argue for its rigid dichotomy, that report is a non-binding agency interpretation to which no deference is owed. *See Lemus-Escobar v. Bondi*, 158 F.4th 944, 960 (9th Cir. 2025).

[8] Runway's reliance on *Hattler v. Ashton*, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), for support of this point is unavailing. *Hattler* adopted an impermissibly narrow view of Section 1201(a), reasoning that the statute should be "interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Id*. at *8. But that reasoning cannot be squared with *VidAngel* which postdates *Hatler*. *VidAngel* 869 F.3d at 864–65, where the Ninth Circuit rejected the argument that because consumers could already watch the copyrighted movies through authorized DVD and Blu-ray players, the relevant TPMs did not control access but merely restricted copying or use. *Id. Hattler* also did not involve the type of detailed allegations present here: that YouTube uses multiple technical measures to regulate file-level access to audiovisual works, restrict access outside the authorized playback environment, and prevent automated bulk extraction. Compl. ¶¶ 29–40, 44–59, 60–68, 91–94.

16

circumvention claim that is violated by circumvention of access controls, regardless of whether the defendant's later use of the accessed work might or might not constitute copyright infringement. In other words, a person might have a fair-use defense to copyright infringement and still violate Section 1201(a) by breaking through access controls to obtain the work. *See Green*, 111 F.4th at 98 ("Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique or in the format of the original.") (quoting *Reimerdes*, 111 F. Supp. 2d 459). Plaintiffs' claim is therefore not infringement "by another name." It is a claim that Runway bypassed YouTube's technical measures to gain unauthorized technical access to Plaintiffs' audiovisual works in a manner YouTube's system was designed to prevent. Compl. ¶¶ 4–7, 31–43, 80–83, 91–98, 104–08, 146–49. *See also infra*. § IV.C.2.

**B.    Runway Cannot Escape § 1201 Liability by Recasting Protected YouTube Videos as Publicly Accessible**

*1.    Plaintiffs Did Not Surrender Their § 1201 Rights By Uploading To YouTube.*

Runway's next argument—that YouTube videos are publicly accessible and therefore no DMCA claim can lie (Mot. at 16-20)—is simply a recast of the argument above and fails for the same reasons.[9]   For the additional reasons discussed below, Runway's add-on arguments lack support in the text of Section 1201, its own cited-case law, and ignore the actions Runway took to bypass the protections afforded to creators by utilizing the YouTube platform. While Plaintiffs' videos are hosted on YouTube and viewable through YouTube's authorized playback environments, the underlying video files of the works are not accessible. The Complaint alleges

___

[9] As discussed above, Runway's argument that allowing the public to access works via streaming on YouTube somehow obviates its liability for bypassing YouTube's access controls to download Plaintiffs' works has been rejected by courts analyzing these specific claims in this context. *See supra.* § IV.A; *see also Cordova*, 817 F. Supp. 3d at 834 ("Whether [YouTube] videos may be viewed by the public is immaterial [to a § 1201(a)(1)(A) claim].").

that Runway circumvented YouTube's TPMs to obtain bulk-file-level copies for commercial AI training. These allegations plausibly state a claim.

First, Runway asserts, there is a "statutorily required showing that [Plaintiffs'] authorization is necessary to gain access to their works on YouTube." Mot. at 16. Section 1201(a)(1)(A) states: "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." Section 1203, the remedy provision for Section 1201, likewise states: "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." Therefore, Runway's statement is simply wrong: there is no statutorily required showing that authorization from Plaintiffs is a necessary element of a claim under Section 1201(a)(1).

Next, Runway insists that "publicity," via posting works on YouTube, forecloses Plaintiffs' claims. Mot. at 17. This argument wholly ignores that Plaintiffs posted their videos to YouTube with the understanding and expectation that streaming access was allowed under specific circumstances and non-compliant access to the underlying video files was foreclosed by YouTube's TPMs. Plaintiffs, by uploading their works to YouTube, availed their works of the intrinsic technological measures that protect audiovisual materials on YouTube, *i.e.,* the TPMs. Compl. ¶¶ 8–9, 27–40, 110, 140–45. YouTube's protections allow the public to view works in YouTube's authorized playback environment which includes YouTube's mobile application or the player on YouTube's website, but does not permit downloading for usage outside of YouTube's platform. *Id*. at ¶¶ 32; 34-36. Only by bypassing YouTube's TPMs, and gaining access to the works in a form not contemplated by Plaintiffs was Runway able to access Plaintiffs' works.[10]

---

[10] Nor does publication to YouTube remove copyright protections. The U.S. Copyright Office has addressed the issue of "what publication means in the Internet era." The U.S. Copyright Office "considers a work 'published' when it is made available online if the copyright owner *authorizes the end user to retain copies* .... For example, the fact that a work is expressly authorized for reproduction or download by members of

18

Runway's authorities on this point are distinguishable. *See, e.g.*, *Lexmark*, 387 F.3d at 546 ("Anyone who buys a Lexmark printer may read the literal code of the Printer Engine Program directly from the printer memory, with or without the benefit of the authentication sequence [TPM] ..."); *MDY*, 629 F.3d at 952 ("Since a player need not encounter Warden [the TPM] to access WoW's individual non-literal elements, Warden does not effectively control access to those elements.); *Digital Drilling Data Sys., LLC v. Petrolink Serv's, Inc.*, 965 F. 3d 365, 376 (5th Cir. 2020) ("[T]he database itself was available via third party programs without ever encountering those measures and, in any event, [Defendant] did not circumvent those measures."). Here, the underlying audiovisual files were only accessible because Runway used methods that bypassed and disabled YouTube's TPMs. The TPMs therefore effectively controlled access to the works and Runway circumvented them to retrieve the files in the manner it wanted to train its AI. *See* Compl. ¶¶ 32-38; *cf. Corley*, 273 F.3d at 453 (rejecting argument of entitlement to a work in a preferred format for fair use purposes). Additionally, while Runway discusses, at length, the *public's* ability to stream the videos on YouTube, *Runway* did not stream the works through this publicly available method; instead, Runway bypassed YouTube's TPMs to get its preferred format. Compl. ¶¶ 7, 31–38, 41–43, 78–83, 91–108, 146–49, 152–54.

---

the public or is expressly authorized for distribution by the public creates a reasonable inference that copies ... have been distributed and that publication has occurred" – it is not enough for the work to be "merely displayed or performed online."7 U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1008.3(B) (3d ed. 2021) (emphasis supplied). While "[i]t may seem odd that allowing the whole world to view or hear a work does not constitute publication of a work[,] ... [a] mere display or performance is not a distribution, because the end user does not retain a 'copy' ... of the work, as defined under the Copyright Act." *Id*. § 1008.3(B) (citing 17 U.S.C. § 101 (definition of "copies")). *See also Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 99-100 (S.D.N.Y. 2020) (providing a photograph for posting to a fanblog was not publication); *Einhorn v. Megatroyd Productions*, 426 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2006) (posting video of show's performance on website did not constitute publication).

### 2. *Access To Plaintiffs' Works Includes Access To The Underlying Digital Files Embodying Them*

Runway's final argument regarding "files" also fails. Runway contends that "access to a work" under § 1201(a)(1)(A) means only access to the expressive content of Plaintiffs' videos, not access to the underlying digital files embodying those works. Mot. 20-22. From there, Runway reasons that because Plaintiffs' videos can be streamed through YouTube's authorized player, no TPM restricting access to the underlying audiovisual files can qualify as an access control. That argument finds no support in the statute and would radically narrow § 1201(a) in a way Congress did not intend.

Nothing in the text of Section 1201(a) limits access controls to measures that prevent all perception of a work through every authorized channel. *See e.g.*, *Yout.,* 633 F. Supp. 3d at 664–72. Nor does the statute exclude access controls that protect the digital embodiment of the work needed to download, copy, store, process, or ingest it. If Runway were right, virtually no streaming-platform access control would qualify, because most digital works can be perceived through some authorized interface—a streaming player, preview window, sample clip, or subscription portal. Section 1201(a) would protect only works hidden entirely from view, rather than the technological locks Congress enacted the DMCA to protect.

The Complaint alleges exactly the distinction Runway tries to erase. Plaintiffs allege that YouTube permits a limited, controlled form of access, while using TPMs to prevent users from obtaining the underlying audiovisual files. Compl. ¶¶ 2–7, 29–40, 60–68, 91–94, 140–49. Runway did not stream Plaintiffs' works like an ordinary viewer, it allegedly used automated scraping infrastructure, yt-dlp or similar descrambling tools, proxy networks, IP rotation, renewed session credentials, and token extraction or reuse to bypass YouTube's TPMs and obtain persistent file-level copies for commercial AI training. *Id*. at. ¶¶ 78–83, 91–108, 146–54.

A copyrighted audiovisual work necessarily exists in some fixed digital embodiment. YouTube's TPMs control access to Plaintiffs' audiovisual works by controlling access to the usable digital files and media streams through which those works can be copied, stored, reconstructed, processed, and ingested. *Id*. at ¶¶ 28–40, 41–43, 81–83, 91–98, 105–08, 140–42, 146–49. The fact that the works may be watched through YouTube's authorized player does not give Runway permission to bypass YouTube's technological gates and retrieve the files directly from YouTube's servers.

The legislative history of § 1201(a) confirms Plaintiffs' reading. The House Report explains that Section 1201(a) "applies when a person has not obtained authorized access to a copy or a phonorecord of a work for which the copyright owner has put in place a technological measure that effectively controls access to his or her work." H.R. Re No. 105-551(I), at 19 (1998) (emphasis added). The Copyright Act defines a "copy" as a "material object . . . in which a work is fixed . . . and from which the work can be perceived, reproduced, or otherwise communicated," 17 U.S.C. § 101, and a digital file is such a copy. *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008). That forecloses Runway's attempt to separate "works" from the digital copies embodying them for purposes of access control. A measure that controls access to the copy therefore controls access to the "work" within the meaning of Section 1201(a). And courts applying § 1201(a) have likewise treated circumvention to obtain a digital copy embodying a work as circumvention of access to the work. *See VidAngel, Inc.*, 869 F.3d at 864–65 (holding that circumventing TPMs to obtain digital copies of films implicated § 1201(a)).

In addition, as explained above (*see supra*. § II.B), the congressional rulemaking and exemption process supports Plaintiffs' contention. Under Section 1201(a)(1)(C), the Librarian of Congress conducts a triennial rulemaking proceeding to grant exemptions to those who are likely

21

to be "adversely affected" by the anticircumvention provision in their ability to make non-infringing fair uses of copyrighted materials. An illustrative example is an exemption that allows educators and students to lawfully circumvent TPMs that control access to audiovisual files for educational purposes (codified at 37 CFR 201.40(b)(1)(ii)(A)). In 2020, a group of professors and other organizations petitioned the Copyright Office to recommend that the Librarian of Congress extend this exemption.[11] The Copyright Office, supported the petition referencing, among other things, "the need of a communication professor to embed clips in PowerPoint rather than played from YouTube 'because she wants to show higher quality clips and to avoid showing the attached advertisements to her students.'" *Id.*

Just as certain requests for exemptions are granted, like the professors' request described above, others are denied. One such request for exemption that has been repeatedly rejected by the Copyright Office is the request for space-and format-shifting activities, *i.e.*, the ability to copy works from one medium to another to facilitate use. In sum, this is what Runway is advocating for here: that its activities of circumventing the TPMs at issue here are simply to gain access to the content in a different form. However, each iteration of the request for an exemption to allow the copying of audiovisual materials from one format to another has been rejected.[12]

---

[11] Exemptions To Permit Circumvention of Access Controls on Copyrighted Works, 85 Fed. Reg. 65,293, (proposed Oct. 15, 2020) (to be codified at 37 C.F.R. pt. 201), available at: https://www.federalregister.gov/d/2020-22893. (last accessed June 25, 2026)

[12] *See e.g.,* Section 1201 Rulemaking: Eighth Triennial Proceeding Recommendation for the Register of Copyrights, at 100 (October 2021) (rejected exemption for space-shifting: "In the 2006, 2012, 2015, and 2018 rulemakings, the Librarian found, upon the Register's recommendation, that the proponents had failed to establish that space-shifting is a noninfringing use."); Section 1201 Rulemaking: Sixth Triennial Proceeding Recommendation for the Register of Copyrights, at 109 n. 656 (October 2021) (noting prior rejections of requests for a space-shifting exemption: "2012 Recommendation at 162-65 (declining to recommend an exemption for space-shifting of audiovisual works on DVDs); 2010 Recommendation at 224 (declining to recommend an exemption for circumvention of access controls on DVDs and online streamed media to enable viewing on alternate platforms); 2006 Recommendation at 72, 80-83 (declining to recommend exemptions for space-shifting of audio and video content and for creation of back-up copies

Thus, the relevant question is not whether the work can be perceived somewhere through an authorized channel, but whether the defendant bypassed a technological measure that controlled access to the protected work in the form the defendant sought to obtain. Plaintiffs plausibly allege that Runway did exactly that. YouTube's TPMs controlled access to Plaintiffs' works as embodied in YouTube's protected digital files and streams; Runway allegedly bypassed those TPMs to retrieve, reconstruct, download, store, and use those works outside YouTube's authorized environment. Compl. ¶¶ 2–7, 29–40, 78–83, 91–108, 140–54. Runway's unauthorized access to Plaintiffs' works, regardless of format, remains outside of the recognized exemptions for Section 1201(a) and remains a violation of Section 1201(a). Runway's contrary reading would leave the statute protecting only works hidden entirely behind a paywall or encryption that blocks all perception, a result Congress did not intend.

C.    **The Complaint Plausibly Alleges That YouTube's Technological Measures Control Access To Plaintiffs' Works**

Runway next walks through each alleged TPM and argues why each is a "copy control" outside the purview of § 1201(a). *See* Mot. at 22-30. But the Complaint plainly alleges that each of the five TPMs controls access to the audiovisual files that embody Plaintiffs' works. As to four of the five, the Complaint alleges that the measure cuts off access to YouTube altogether when downloading is detected. Runway's separate contention that it did not "circumvent" the proof-of-origin tokens misreads both the statute and the Complaint. And Runway's closing appeal to fair use and the absence of a registration is irrelevant to whether it circumvented an access control.

---

by both space- and format-shifting); 2003 Recommendation at 137, 141 (declining to recommend exemptions for space-shifting of "tethered" e books, sound recordings, and audiovisual works).").

23

### 1. *The Complaint Alleges That Each Of The Five Measures Controls Access, And That Four Cut Off Access Entirely.*

The Complaint identifies five measures and alleges, as to each, that it controls access to the audiovisual files embodying Plaintiffs' works. Compl. ¶¶ 44–59. Only the rolling cipher is even arguably limited to file-level access; the other four are alleged to cut off access to YouTube altogether once downloading is detected. Runway's measure-by-measure attack ignores these allegations and the inferences that must be drawn in Plaintiffs' favor. *See Iqbal*, 556 U.S. at 678.

**Rolling cipher.** Plaintiffs allege that YouTube's rolling cipher operates as a "digital lock" that withholds a usable file URL unless the requesting client transforms an obfuscated signature using proprietary logic. Compl. ¶ 45. Runway responds that the cipher is not an access control because the public can still watch the video by streaming. Mot. at 24-25. But § 1201(a) "does not require that an access control measure be strong or circumvention-proof"; it requires only "some degree of control over access to a copyrighted work." *MDY*, 629 F.3d at 954. A lock that can be picked is still a lock. That the cipher can be reverse-engineered with a tool like the one Runway is alleged to have used does not defeat its status, because, as *Yout* recognized, "the fact that a person may deactivate or go around a TPM does not mean that the technology fails to offer effective control," since a contrary rule "would render the DMCA nonsensical." *Yout,* 633 F. Supp. 3d at 672. Courts addressing this exact measure have held YouTube's rolling cipher to be an access control. *See Cordova*, 817 F. Supp. 3d at 832–35; *Yout*, 633 F. Supp. 3d at 665–70; *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *4 (E.D. Va. Dec. 16, 2021). A measure that controls the manner of access is an access control even where the work may be viewed by other authorized means. *See VidAngel*, 869 F.3d at 864–65.

**IP blocking and rate limiting.** Plaintiffs allege that when YouTube detects abnormal request volume from an IP address, it "cut[s] off platform access from the offending IP address

24

entirely, preventing any further retrieval of audiovisual content from that source." Compl. ¶ 47-48. That is not a limit on copying; it is a denial of access. Blocking a user from reaching YouTube's servers is a "process or a treatment" bearing on the ability "to gain access to the work," 17 U.S.C. § 1201(a)(3)(B), and an access control may both "block initial access" and "revoke access" after a secondary check, *MDY*, 629 F.3d at 943. Runway's rejoinder, that a user can switch to a new IP address (Mot. at 26), goes to the strength of the measure, not its character; again, an access control need not be "circumvention-proof." *Id*. at 954. And the Complaint alleges that Runway did affirmatively circumvent this TPM by deploying an IP-rotation scheme that substituted a fresh IP address before the block could take effect. Compl. ¶¶ 91–108. Avoiding a measure is circumvention under § 1201(a) which reaches one who acts to "avoid, bypass, remove, deactivate, or impair" a TPM, not only one who defeats it after full engagement. A burglar who slips past the alarm, rather than deactivating it once the alarm is triggered, has still circumvented it.

*Session-bound, short-lived URLs.* Plaintiffs allege that YouTube issues temporary URLs tied to a particular playback session, such that once "the authorization window expires or the session ends," the "server . . . refuse[s] to deliver the audiovisual file in response to that URL." Compl. ¶ 50; *see also id*. at ¶ 51 ("automated system[s] attempting to access videos outside ordinary playback cannot rely on a static link and must instead repeatedly obtain fresh authorization parameters and regenerate valid media URLs."). This TPM thus controls access by limiting when, and from what authenticated context, the files may be obtained. Runway answers that these are merely "streaming URLs" (Mot. at 27, citing Compl. ¶ 39), but the label is immaterial; the allegation is that once the session ends, access to the file is refused. Plaintiffs allege

25

that Runway defeated the measure by programmatically renewing expired credentials to maintain access outside an authorized playback session, *Id.* at ¶¶ 91–108, which is circumvention.

***CAPTCHA challenges.*** Plaintiffs allege that YouTube deploys CAPTCHA challenges that condition continued access on proof that the requester is a human rather than an automated system, triggered when YouTube detects automated or suspicious activity. Compl. ¶¶ 52-53 Courts have repeatedly held that allegations of circumventing a CAPTCHA system state a § 1201(a) claim at the pleading stage. *See Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164, 1174 (C.D. Cal. 2018) (allegations that the defendant's software circumvented a CAPTCHA protecting copyrighted material sufficed to survive dismissal; "there are no heightened pleading requirements for a DMCA circumvention claim"). Indeed, Runway's own authority treated CAPTCHA as an access control. *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007).

Runway's contention that CAPTCHA cannot be an access control because it is not presented before every view (Mot. at 27-28) misreads the applicable caselaw: The test is not whether a measure gates every access to qualify; the statutory test is "some degree of control." *MDY*, 629 F.3d at 954. At most, Runway's "not every time" argument raises a question about how the measure operates, which is exactly the fact question that cannot be resolved on the pleadings. *See Sony Music*, 2026 WL 1019199, at *3. And the Complaint alleges that Runway's large-scale automated downloading necessarily generated the request patterns that trigger CAPTCHA, which Runway then evaded through automation, Compl. ¶¶ 52, 91–108, supporting the reasonable

26

inference, which must be drawn in Plaintiffs' favor, that Runway circumvented the challenge to reach the files. *See Iqbal*, 556 U.S. at 678.

***Proof-of-origin tokens.*** Plaintiffs allege that YouTube generates cryptographic proof-of-origin tokens during an authenticated playback session and requires that "all requests for video segments include" a valid token "that validate[s] the request as originating from an authorized YouTube playback environment." Compl. ¶ 56. In other words, delivery of the file is conditioned on credentials that are issued only within an authorized session. That is a classic authentication measure which is a paradigmatic access control.

Runway does not seriously dispute that an authentication gate controls access. It argues instead that, even if the proof-of-origin tokens are access controls, its reuse of valid tokens was not "circumvention." Mot. at 29. The cases Runway invokes do not support dismissal. In *I.M.S.* and *Dish Network*, the courts held that a defendant who used a single, validly issued credential in the ordinary, intended manner had not circumvented anything, because it "did not surmount or puncture or evade any technological measure." *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532–33 (S.D.N.Y. 2004); *See Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 465–66 (E.D.N.Y. 2012). That is not what the Complaint alleges. Plaintiffs allege that Runway used automated tools operating outside YouTube's authorized player to "extract[], replicat[e], or reus[e] proof-of-origin token parameters" in order to obtain "files that YouTube's token system was designed to deliver only to approved clients." Compl. ¶¶ 56–59, 107–08. Spoofing an authorized client by extracting and replaying token parameters is conduct that falls squarely withing § 1201(a). Whether Runway's tools merely presented a validly issued

credential as designed, as in *I.M.S.*, or instead defeated the authentication gate, as the Complaint alleges, is, again, a factual dispute that cannot be resolved on a motion to dismiss.

### 2. Sustaining Plaintiffs' 1201(a) Claim Creates No "End-Run" Around The Copyright Act And Poses No Threat To Fair Use.

At the tail end of this section, Runway suggests that Plaintiffs' "real concern" is infringement and that they are manufacturing DMCA claims to avoid the requirements and defenses of copyright infringement. *See* Mot. at 30. But Section 1201(a) creates a right "independent of traditional copyright infringement," with its own elements and its own remedies. *MDY*, 629 F.3d at 945–46. A § 1201(a) claim therefore does not require copyright registration, because it does not vindicate the § 106 rights to which the registration requirement attaches. *See Viral DRM LLC v. Seven W. Media, Ltd.*, 768 F. Supp. 3d 1025, 1031–32 (N.D. Cal. 2025); *Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008). That Plaintiffs did not register their works, is therefore irrelevant to the sufficiency of their circumvention claim.

Fair use fares no better. Fair use is a defense to copyright infringement; it is not a license to circumvent an access control. "Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique or in the format of the original." *Corley*, 273 F.3d at 459. As the court explained in *United States v. Elcom Ltd.*, that "certain fair uses may become more difficult" under § 1201(a) does not mean "the fair uses themselves have . . . been eliminated or prohibited." 203 F. Supp. 2d 1111, 1131 (N.D. Cal. 2002). *Bartz* and *Kadrey*, on which Runway relies, are fair-use centric decisions in copyright-infringement cases; neither addresses whether YouTube's measures are access controls or whether Runway circumvented them, and neither speaks to the elements of a § 1201(a) claim. Finally, if Runway believes that applying § 1201(a) to stream-ripping sweeps too broadly, the remedy is the

28

triennial rulemaking process (*see supra.* § II.B) not a judicial narrowing of the statute. As the D.C. Circuit explained in *Green*, "[w]hat the fair use defense does for copyright infringement, the exemptions do for section 1201(a)." 111 F.4th at 101. Runway has not sought such an exemption.

**D.     Plaintiffs Need Not Own or Operate YouTube's TPMs to Invoke § 1201**

Runway's final argument is that Plaintiffs cannot bring their DMCA claims because they lack authority over YouTube's TPMs. *See* Mot. at 30-32. This argument runs afoul of established caselaw. In *Yout*, the court noted that the "plain text of the statute . . . does not set forth a requirement that the copyright owner put a technological measure in place" in order for the copyright owner to enjoy the DMCA's anti-circumvention protections. 633 F. Supp. 3d at 665. Therefore, Plaintiffs do not need to: have built and operated these TPMs themselves; own the YouTube platform in order to avail themselves of YouTube's TPMs; or prove that YouTube will operate the TPMs in perpetuity. Plaintiffs need only allege that their works, as hosted on YouTube, are subject to TPMs that control access and that Runway circumvented those TPMs. Plaintiffs have done that. *See* Compl. ¶¶ 2–6, 29–40, 69, 78–83, 91–108, 140–49. These allegations are sufficient to state a claim under the DMCA.

**V.     CONCLUSION**

For the foregoing reasons, the Court should deny Runway's motion to dismiss. If the Court concludes that any of Plaintiffs' claims are insufficiently pleaded, Plaintiffs respectfully request leave to amend.

Dated: June 26, 2026                    Respectfully submitted,

                                        /s/ Mark Svensson_____
                                        Mark Svensson (NY Bar No. 5974290)
                                        Michael A. Acciavatti (*Pro Hac Vice* Forthcoming)
                                        **MILBERG, PLLC**
                                        405 East 50th Street
                                        New York, Ny 10022
                                        Tel: (212) 594-5300
                                        msvensson@milberg.com
                                        macciavatti@milberg.com

                                        Gary M. Klinger (admitted *Pro Hac Vice*)
                                        William J. Edelman (*Pro Hac Vice* Forthcoming)
                                        **MILBERG, PLLC**
                                        227 W. Monroe Street, Suite 2100
                                        Chicago, Il 60606
                                        Tel: (866) 252-0878
                                        wedelman@milberg.com
                                        gklinger@milberg.com

                                        Tom Kherkher (*pro hac vice*)
                                        Jarrett Lee Ellzey (*pro hac vice forthcoming*)
                                        Leigh S. Montgomery (*pro hac vice forthcoming*)
                                        **ELLZEY KHERKHER SANFORD MONTGOMERY
                                        LLP**
                                        4200 Montrose Street, Suite 200
                                        Houston, TX 77006
                                        JEllzey@EKSM.com
                                        TKherkher@EKSM.com
                                        LMontgomery@EKSM.com

                                        James E. Cecchi (*pro hac vice* forthcoming)
                                        Kevin G. Cooper (*pro hac vice* forthcoming)
                                        **CARELLA BYRNE CECCHI
                                        BRODY & AGNELLO, P.C.**
                                        5 Becker Farm Rd.
                                        Roseland, NJ 07068
                                        Tel: (973) 994-1700
                                        jcecchi@carellabyrne.com
                                        kcooper@carellabyrne.com

                                        *Attorneys for Plaintiffs and the Proposed Class*

30

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated via electronic mail on this the 26th day of June 2026.

/s/ *Mark K. Svensson*
Mark K. Svensson

31