**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACE CAM, INC. and BUSINESSING LLC, each individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>RUNWAY AI, INC.,<br><br>      Defendant. | Case No.: 1:26-cv-01362-LAK<br><br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT RUNWAY AI, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT........................................................................................................................... 1

I.   Plaintiffs' Claim Fails Because They Have Not Alleged Circumvention Of A Measure That "Controls Access To A Work." ..................................................................................... 1

    A. The Anti-Copying Allegations Do Not Plead "Access" Controls On Concededly Publicly Available Videos.............................................................................................................. 2

    B. "File"-Copying Allegations Do Not Plead Access Controls For The "Work.".................. 6

    C. The Opposition Confirms Plaintiffs' Case Targets Copy Controls. .................................. 7

II.  Plaintiffs' Claim Independently Fails Because The Alleged TPMs Control Copying. ............ 8

III. Plaintiffs' Claim Independently Fails Because They Concededly Lack Authority Over YouTube's TPMs.................................................................................................................. 10

CONCLUSION....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ............................................................................................4

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ............................................................................................5

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427, 139 S. Ct. 2356 (2019)...............................................................................7

*Gomez-Perez v. Potter*,
553 U.S. 474, 128 S. Ct. 1931 (2008)...............................................................................3

*Green v. U.S. Dep't of Just.*,
111 F.4th 81 (D.C. Cir. 2024).......................................................................................5, 7

*Hattler v. Ashton*,
2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ...............................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ..........................................................................................3

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y. 2004)............................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) .......................................................................................3, 4

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) .........................................................................3, 6, 8, 10

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
306 F. Supp. 3d 1164 (C.D. Cal. 2018) ...........................................................................9

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) ...........................................................................2, 3, 4, 5, 7

*Universal City Studios, Inc. v. Reimerdes*,
111 F. Supp. 2d 294 (S.D.N.Y. 2000) ..............................................................................5

*Van Buren v. United States*,
593 U.S. 374, 141 S. Ct. 1648 (2021).............................................................................3

**Statutes**

17 U.S.C. § 1201(a)(1)............................................................................................ *passim*

17 U.S.C. § 1201(a)(3)(B) ..............................................................................2, 8, 9, 10

**Other Authorities**

*Gain/Get Access To*, MERRIAM-WEBSTER, https://tinyurl.com/4r753d4y.......................................2

U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* 125 (2024), https://tinyurl.com/t6ed4m54.................................................................................................9

**INTRODUCTION**

Plaintiffs agree: Anyone in the world can access their works on YouTube with no more than a stock web browser and an internet connection. *See* Mot. (ECF 35) 16-17; Opp. (ECF 41) 12, 18. For all the noise Plaintiffs make about restrictions on "file" downloading and what happens under YouTube's hood, none of it changes the basic, undisputed fact that YouTube "allow[s] the public to view [their] works" without any payment, password, or other measure. Opp. 18. That is the end of the road under § 1201(a)(1) of the DMCA. Once a work is publicly available, the DMCA's prohibition on circumventing an access control ends and the standard law of copyright infringement takes over.

Faced with a statutory regime under which they cannot state a claim, Plaintiffs ignore the statutory text, neglect dispositive arguments, and attack strawmen. They assert Runway's motion presents "a fact-bound question," but neglect to identify that question. Opp. 11. That is because there is none; the legal insufficiency of Plaintiffs' claim is disclosed on the face of their pleading. No amount of discovery will change the fact that Plaintiffs' works are publicly accessible on YouTube, foreclosing a claim under § 1201(a). *Infra* § I. Plaintiffs' claim independently fails because they concede that YouTube's measures lack the basic locks and keys that define a § 1201(a) access control. *Infra* § II. And Plaintiffs' claim fails a third time over because they admittedly lack the statutorily required authority over YouTube's measures. *Infra* § III. The Court should dismiss the Complaint with prejudice.

**ARGUMENT**

**I.     Plaintiffs' Claim Fails Because They Have Not Alleged Circumvention Of A Measure That "Controls Access To A Work."**

There is no "fact-bound" (Opp. 11) reason to delay resolution of the statutory question at the core of this case: whether a measure that permits public access (like video streaming) but

restricts copying (like file downloading) qualifies as an "access control" under § 1201(a)(1)(A). Mot. 9. Section 1201 answers "no." § I.A. Plaintiffs' emphasis on "files" does not change that. § I.B. Instead, it only underscores their real target is circumvention of copy controls—*not* access controls. § I.C.

> **A.    The Anti-Copying Allegations Do Not Plead "Access" Controls On Concededly Publicly Available Videos.**

*YouTube's public accessibility is incompatible with access controls.* Runway demonstrated that a measure is only an "access control" under § 1201(a) where it prevents access to a work. Mot. 10-16. Plaintiffs assert that Runway "attempt[s] to rewrite the statute," Opp. 11, yet themselves ignore the statutory text for pages. *See* Opp. 11-14 (no citation to § 1201). In fact, they dodge Congress's direction that an access control is a measure that requires a user to present a key in order to "gain access to the work" for the entirety of their argument—never once addressing this essential element. 17 U.S.C. § 1201(a)(3)(B); *see* Opp. 11-23.[1] As Runway already explained, that text means a work cannot be broadly available "in the ordinary course" and yet still subject to an access control. § 1201(a)(3)(B); *see* Mot. 11-12. "Gain access" means "get the right to see," and no key is necessary to get the right to see a video on YouTube. *Gain/Get Access To*, MERRIAM-WEBSTER, https://tinyurl.com/4r753d4y.

The statutory structure confirms YouTube's anti-downloading measures are not "access controls." *See* Mot. 13-17. Plaintiffs "do not dispute that Section 1201 distinguishes between access controls and copy controls." Opp. 14. As the Second Circuit notes, § 1201(a) is about measures that "*prevent access* to a work," while § 1201(b) (and the law of copyright infringement) concern measures that "*permit access* to a work but *prevent copying* of the work." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (cited at Mot. 15). So,

---

[1] All following statutory citations are also to 17 U.S.C. unless otherwise indicated.

contrary to Plaintiffs' suggestion (at Opp. 11-12), the distinction Congress drew was not between access "prevention" and access "control," but between measures that "control[] access" in § 1201(a) and measures that *control copying* in § 1201(b) by "protect[ing] the right of a copyright owner." If a measure could qualify as an access control based on no more than limiting a user's ability to download a file—that is, infringe—every anti-downloading measure would qualify under both provisions for the exact same reasons.

Courts have accordingly rejected partial-access interpretations like Plaintiffs', in the context of both digital access broadly and § 1201 specifically. *See* Mot. 12-13, 17-20. Plaintiffs dismiss the Supreme Court's "gates-up-or-down" interpretation of "access," *Van Buren v. United States*, 593 U.S. 374, 390, 141 S. Ct. 1648, 1658 (2021), and the Ninth Circuit's holding that a "defining feature of public websites is that their publicly available sections lack limitations on access," *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022), because those decisions "addressed the Computer Fraud and Abuse Act, not Section 1201," Opp. 13-14— ignoring that statutory interpretation is "guided" by "decisions interpreting similar language" in related statutes, *Gomez-Perez v. Potter*, 553 U.S. 474, 479, 128 S. Ct. 1931, 1936 (2008) (quoted at Mot. 12). Both the CFAA and DMCA anti-circumvention provisions are concerned with data security, and harmonizing the interpretation of similar statutes with comparable purposes makes a lot more sense than creating statutory discord.

Plaintiffs do even less to address the circuit consensus that a measure which controls some interactions with a work—including the ability to download or use it—does not qualify as an "access control" under § 1201 if the work is still readily viewable or readable in other forms. *See* Mot. 17-18 (discussing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 953 (9th Cir. 2010);

*Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 376-77 (5th Cir. 2020)). Plaintiffs never contest the legal principle for which those cases stand. Instead, they bury *Lexmark* in a footnote and sweep away the remaining cases in a single sentence, asserting none "involve[d] … the file-level measures alleged here." Opp. 13 n.4, 19. But each of these cases involved a work that was freely available in some forms but not in others, so Plaintiffs' allegations that their works are free to stream but not download are on all fours.

Plaintiffs' only other answer is to cite mostly the same district court decisions Runway has already distinguished and refuted. *Compare* Opp. 13, *with* Mot. 19-20 & n.7. The only new development is *Justice v. Uncharted Labs, Inc.*, which deferred the statutory construction question by following *Sony v. Uncharted Labs, Inc. See Justice*, No. 25 Civ. 5026, 2026 WL 1430232 (S.D.N.Y. May 21, 2026) (relying on *Sony*, No. 24 Civ. 4777, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026)). There is no basis to defer here. Discovery into how the alleged TPMs function will not change the fact that Plaintiffs' videos are openly accessible to anyone with an internet connection. Mot. 20. The Court need only find that to grant Runway's motion.

Plaintiffs' remaining "statutory" defenses miss the point. They insist access controls need not be "circumvention-proof" to be effective. Opp. 12. Runway did not address effectiveness in its motion because it didn't need to—the alleged TPMs aren't *access* controls at all. *E.g.*, Mot. 17. Plaintiffs then cite *Corley* and assert the "Second Circuit is clear—permission from the copyright owner for one act does not provide permission for all acts." Opp. 13; *see* Opp. 2. In *Corley*, copyright owners locked their videos on encrypted DVDs and authorized buyers to gain access to the works by viewing them in licensed DVD players. The Second Circuit held that giving buyers a key to the lock did not authorize them to circumvent that very lock by decrypting DVDs. 273 F.3d at 444. That does not help Plaintiffs, who expressly granted the world a "license

- 4 -

to access" their content—with no lock in sight. YouTube Terms of Service (ECF 36-2) at 9.

In the end, Plaintiffs' own examples prove Runway's point. DVD encryption, at issue in *Corley* and Plaintiffs' rulemaking exemption example (at Opp. 22), scrambles a movie to render it completely unviewable without a licensed DVD player. *Green*'s "subscription-based video or music streaming services" that "requir[e] users to subscribe and log in" are the same. *Green v. U.S. Dep't of Just.*, 111 F.4th 81, 89 (D.C. Cir. 2024). That makes sense. Congress enacted the access-control provision to serve a narrow, specific role in the context of a robust copyright regime that already provides remedies for unauthorized file downloading and copying. Mot. 13-16. YouTube's measures, unlike those in Plaintiffs' examples, allow anyone to view videos with nothing more than a free web browser—foreclosing a § 1201(a)(1)(A) claim as a matter of law.

**VidAngel *does not say otherwise.*** Plaintiffs next take aim at the strawman that "measures can only be 'access controls' or 'copy controls.'" Opp. 15-16. But Runway does not argue that no technology could ever satisfy both provisions of the statute. There is thus no need to engage with Plaintiffs' argument about "purpose" and regulatory exemptions. *Id.*

Plaintiffs' suggestion that the existence of measures controlling both access and copying means every copy control must also be an access control is just wrong. Plaintiffs' central authority for this point, *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), had no reason to address the meaning of "access control." The point was not contested: Everyone agreed that the CSS DVD encryption at issue in that case was an access control under § 1201. *Id.* at 863. Encryption scrambles the content on a disk, so it is unviewable. A video is decrypted using a special key provided with licensed DVD players. *Id.* at 853 & n.1; *see Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 305-09 (S.D.N.Y. 2000) (describing operation of CSS and DeCSS) (Kaplan, J.), *aff'd sub nom. Corley*, 273 F.3d at 435.

YouTube is different. Open access is the default—which is why *VidAngel* could not supersede *Hattler*. *See Hattler v. Ashton*, 2017 WL 11634742, at *7 (C.D. Cal. Apr. 20, 2017) (distinguishing DVD decryption from downloading publicly available works); Opp. 16 n.8. In context, *VidAngel* holds nothing more than that DVD encryption—which has no resemblance to YouTube's measures asserted here—can both restrict use and qualify as an access control under § 1201(a)(1). 869 F.3d at 863-65. But it does not hold that copy controls are coextensive with access controls. Nor does *VidAngel* hold that a defendant who reproduces a *freely accessible* work has circumvented access controls. After all, the Ninth Circuit has squarely held otherwise. *See* Mot. 13-14, 18 (discussing *MDY*); *VidAngel*, 869 F.3d at 864 n.16 (embracing *MDY*).

**B.      "File"-Copying Allegations Do Not Plead Access Controls For The "Work."**

Plaintiffs' other approach is to ignore the statutory term "work" and replace it with "file"—a common mistake in copyright cases seeking to conflate an embodiment or copy with the work itself. *E.g.*, Opp. 1, 2, 7, 10, 12, 16, 17-23, 24; *see* Mot. 20-21. The Copyright Act distinguishes a "copyrighted work"—here, the "series of related images … with accompanying sounds" that constitute an audiovisual work—from the form in which it is "embodied"—like a file. §§ 101, 202. "Accessing files" is not enough to state an access control claim where the "work" itself is already accessible. And here, Plaintiffs concede—and no amount of discovery could change—that the work is open to the public on YouTube.

Plaintiffs answer that "access to Plaintiffs' works *includes* access to the underlying digital files." Opp. 20 (title case omitted, emphasis added). But since they do not deny their works are freely available, the *most* they can claim is "a limited" control "of access" in which some forms are available (the audiovisual stream) and some forms are not (the underlying file), Opp. 20— exactly the kind of "partial access" theory that (as just shown) fails under the plain text of § 1201(a)(1). *Supra* § I.A. To the extent they suggest controlling only the file suffices, they offer

no explanation for how that interpretation maintains the Copyright Act's distinction between a "work" and the material file in which it is "embodied." Mot. 21; *see* § 202. In fact, the only support they muster is a line of legislative history, Opp. 21—which cannot be used to "'muddy' the meaning of 'clear statutory language.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436, 139 S. Ct. 2356, 2364 (2019) (citation omitted). Otherwise, they threaten that "[i]f Runway were right, virtually no streaming-platform access control would qualify." Opp. 20. Setting aside that policy concerns cannot be used to rewrite a statute, Plaintiffs' threat rings hollow: Runway already gave examples (at Mot. 2) of streaming platforms, like HBO Max and Netflix, which would fit the bill by virtue of their password protection—an access control YouTube undisputedly avoids in the interest of publicity.

### C.    The Opposition Confirms Plaintiffs' Case Targets Copy Controls.

Plaintiffs' attempt to swap "work" for "file" (or copy) betrays their true concern: copying. Allegations of "accessing files" are merely how Plaintiffs package Runway's alleged conduct—downloading files, Compl. ¶ 6—into the language of § 1201(a)(1)(A). *See, e.g.*, Opp. 16, 22; *see also, e.g.*, Opp. 18, 20-21. Labels cannot change that the conduct Plaintiffs challenge is outside the scope of § 1201(a)—and can only be tested under the Copyright Act itself, with its attendant limitations and defenses, particularly fair use.

Plaintiffs therefore do not help themselves with the uncontroversial point that § 1201(a) creates a "standalone" or "independent" claim. *See* Opp. 16-17, 28-29 (citation omitted). The question is whether Plaintiffs have pled such a claim, and their opposition confirms they have not. Plaintiffs' references to the rulemaking process thus miss the point: No exception is necessary for conduct that does not circumvent an access control in the first place. *See* Opp. 21-22; Opp. 28-29. Similarly, Plaintiffs' citations (at Opp. 17, 28) to cases like *Green* and *Corley* for the notion that fair use does not guarantee access ignores that the reasoning in those cases

- 7 -

only applies where a sufficient access control is deployed, thereby protecting the distinction Congress drew between accessing and copying. Permitting a copy-control claim to proceed under § 1201(a) would erase that careful distinction, creating a shadow claim for infringement that lacks the limitations and defenses of the Copyright Act.

## II.      Plaintiffs' Claim Independently Fails Because The Alleged TPMs Control Copying.

Plaintiffs' claim fails for another, independent reason. To plausibly allege a § 1201(a) violation, Plaintiffs had to plead three elements: a lock, a key, and a break-in. Mot. 23. First, the *lock*: a technological measure must "control access," as distinct from a measure that simply controls downloading. That means the measure must control access to the work "in the ordinary course of its operation," not selectively. § 1201(a)(3)(B). Second, the *key*: a user must be able to "appl[y] … information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* And third, the *break-in*: Plaintiffs only have a viable claim if Runway "circumvent[ed]" the measure. § 1201(a)(1)(A). Runway explained that every one of Plaintiffs' purported TPMs fails to meet *multiple* of these requirements. Mot. 23-30. Yet for each TPM, Plaintiffs fail to address, and thus concede, that at least one requisite element is missing.

*(1) Rolling Cipher.* Plaintiffs lead with the point that § 1201 does not require a "circumvention-proof" measure. Opp. 24 (citing *MDY*, 629 F.3d at 954). As *MDY* makes clear, that answers whether a measure is sufficiently "effective," a separate requirement under § 1201(a)(1)(A). *See* 629 F.3d at 954. Runway does not address effectiveness in this motion because, as noted (at 4), it does not need to. Second, Plaintiffs cite *VidAngel* for the notion that an access control exists even when the work is otherwise accessible. Opp. 24. *VidAngel* says no such thing. *Supra* 5-6. Meanwhile, Plaintiffs never contest that the rolling cipher is an *anti-download* control that does not prevent anyone from accessing a YouTube video, or that there is no information or process that the copyright owner provides that might disable the rolling cipher.

- 8 -

Mot. 24-25. Without a lock or key, the rolling cipher is not a TPM as a matter of law.

(2) *IP Blocking and Rate Limiting.* Plaintiffs concede this alleged "denial of access" only occurs "when YouTube detects abnormal request volume from an IP address" consistent with downloading. Opp. 24-25; *see* Compl. ¶ 47. That is a copying control, not a lock which guards a work from the get-go in the "ordinary course," § 1201(a)(3)(B). Separately, the measure also fails because there is no key. Mot. 25-26. The Copyright Office agrees: "[R]ate limit enforcement systems do not effectively control access to a work" because "[t]hey do not require 'the application of information, or a process or treatment,'—but instead require that users refrain from conduct." U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* 125 (2024), https://tinyurl.com/t6ed4m54. Plaintiffs never say otherwise. Instead, their remaining arguments go to "effectiveness," which Runway's motion did not put at issue. Opp. 25.

(3) *Short-Lived Links.* Plaintiffs assert this TPM "controls access by limiting when, and from" where, "the files may be obtained." Opp. 25-26. But they concede there is no lock or key: "Obtain[ing]" "files" is downloading, not accessing; anyone can use the links to stream in the ordinary course; and Plaintiffs plead no way to gain authorized "access." Mot. 26-27.

(4) *CAPTCHA Challenges.* There is no "fact question" about "how the measure operates," *contra* Opp. 26: Plaintiffs pled that YouTube only serves CAPTCHAs "[w]hen traffic patterns indicate automated or suspicious activity" consistent with downloading. Compl. ¶ 52. As Runway explained, that distinguishes this case from cases (cited at Opp. 26) where CAPTCHA challenges blocked *all* access unless solved. *See* Mot. 28 n.8; *see also Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164, 1174 (C.D. Cal. 2018). Plaintiffs' own allegations establish that YouTube is open access, not locked behind CAPTCHAs. Otherwise, Plaintiffs only

- 9 -

recite *MDY*'s test for what makes a measure *effective*—which is (still) not at issue for purposes of this motion. Opp. 26 (quoting *MDY*, 629 F.3d at 954).

(5) ***Proof-of-Origin Tokens.*** Plaintiffs concede there is no process or treatment a user must apply (the *key*) for YouTube to issue proof-of-origin tokens and play a video, which is independently dispositive. Mot. 28. Further, they have not pled that Runway *broke* the purported lock. To "circumvent" is to "avoid, bypass, remove, deactivate, or impair" a measure, § 1201(a)(3)(A)—in other words, to break the measure itself. *See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2004); Mot. 29-30. But even if Runway "extract[ed], replicat[ed], or reus[ed] proof-of-origin token[s]" to obtain "files" intended for YouTube's player, Compl. ¶¶ 56-59, 107-08 (cited at Opp. 27), YouTube's system worked as designed: It received tokens and issued files. Naming Runway's activity "spoofing" (with no further explanation) does not change that Runway did not break the measure itself.

III.    **Plaintiffs' Claim Independently Fails Because They Concededly Lack Authority Over YouTube's TPMs.**

Runway laid out the statutory requirement that the "copyright owner" exercise "authority" over an access control "in the ordinary course of its operation." Mot. 30-32 (quoting § 1201(a)(3)(B)). Plaintiffs offer no alternative statutory interpretation argument. Opp. 29. Their sole answer is that "established caselaw" does not require them to have any stake in the measures, and their sole support is *Yout*—whose erroneous statutory construction no other court has adopted and is currently on review in the Second Circuit. Opp. 29. Plaintiffs concede they lack authority over YouTube's measures, as required by the statute, so their claim independently fails as a matter of law. *See* Opp. 29.

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

- 10 -

Dated: July 13, 2026

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP


By: */s/ Nathan Shaffer*

ORRICK, HERRINGTON & SUTCLIFFE

Annette L. Hurst (*pro hac vice*)
Nathan Shaffer (*pro hac vice*)
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone: (415) 773-5700
ahurst@orrick.com
nshaffer@orrick.com

Marc Shapiro
Vanessa Sorrentino
Hilda Obeng
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
mshapiro@orrick.com
vsorrentino@orrick.com
hobeng@orrick.com


Attorneys for Defendant
RUNWAY AI, INC.

- 11 -