# EXHIBIT A

2026 WL 2970541
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

TED ENTERTAINMENT, INC., et al., Plaintiffs,
v.
BYTEDANCE INC, Defendant.

Case No. 3:25-cv-10933-JSC
|
Filed 10/02/2026

**Attorneys and Law Firms**

Max Lalon Tribble, Jr., Justin A. Nelson, Pro Hac Vice, Susman Godfrey L.L.P., Houston, TX, Jarrett Lee Ellzey, Pro Hac Vice, Ellzey & Associates PLLC, Houston, TX, Rohit Dwarka Nath, Michael Gervais, Susman Godfrey L.L.P., Los Angeles, CA, Rom Aric Bar-Nissim, Heah Bar-Nissim LLP, Los Angeles, CA, Morgan Ashley Lois McCollum, Pro Hac Vice, Susman Godfrey LLP, New York, NY, Tom Kherkher, EKSM, LLP, Houston, TX, for Plaintiffs.

Anne Margaret Voigts, Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA, Kayvan Ghaffari, Laura Christine Hurtado, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, CA, for Defendant.

## ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT

JACQUELINE SCOTT CORLEY United States District Judge

***1** Plaintiffs Ted Entertainment Inc. and Matt Fisher allege Defendant ByteDance Inc. unlawfully circumvented YouTube's technological protection measures to access and scrape Plaintiffs' video content in violation of 17 U.S.C. 1201(a). (Dkt. No. 27.)[1] Now pending before the Court is Defendant's Motion to Dismiss under both Rule 12(b)(1) and 12(b)(6). (Dkt. No. 40.) Defendant argues Plaintiffs' Complaint does not sufficiently allege Article III standing and fails to allege facts sufficient to sustain Plaintiff's claim against Defendant.

After carefully considering the parties' written submissions, and having had the benefit of oral argument on September 24, 2026, the Court DENIES Defendant's Motion to Dismiss. Plaintiffs have sufficiently alleged Article III standing and that they have a statutory cause of action under 17 U.S.C. § 1203. Because Plaintiffs have sufficiently alleged their works were protected by technological measures and that Defendant circumvented those measures when it allegedly accessed their works, Plaintiffs have also stated a claim under 17 U.S.C. 1201(a).

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiffs are one company, Ted Entertainment, Inc., and one individual, Matt Fisher, ("Plaintiffs") who upload original videos to YouTube.[2] (Dkt. No. 27 ¶¶ 18-24.) Plaintiffs "derive[ ] value via viewership, sponsorship, licensing, and related monetization" from uploading videos to YouTube. (*Id.* ¶¶ 19, 22, 24.) Defendant ByteDance, Inc. is a company which develops "artificial intelligence system[s]" to "generate video output from text and image input." (*Id.* ¶ 2.)

When a video is uploaded to YouTube, the public can "watch and listen to videos" online and premium subscribers can stream the videos offline. (*Id.* ¶¶ 33, 72.) However, YouTube "does not provide users with direct access to audiovisual works in their native or fixed form." (*Id.* ¶ 39.) Rather, under YouTube's terms of service, users are "expressly prohibit[ed from] scraping, unauthorized downloading, bulk extraction, or other forms of data mining ...." (*Id.* ¶ 65.) When a user uploads a video, the user "grant[s] license to YouTube for certain uses." (*Id.* ¶ 66.) To prevent video use that exceeds YouTube's terms of service, "YouTube uses technological processes and tools to detect and block access to files for unauthorized downloading." (*Id.* ¶ 34.) Plaintiffs identify five "technological protection measures" ("TPMs") employed by YouTube: "(1) an obfuscated signature system commonly referred to as a 'rolling cipher,' (2) IP-based blocking and rate limiting that restrict high-volume automated access, (3) short-lived, session-bound streaming URLs, (4) CAPTCHA human-verification challenges triggered by automated activity, and (5) proof-of-origin tokens that verify requests originating from authorized client environments." (*Id.* ¶ 45.) Plaintiffs chose to put their videos on YouTube "in substantial part due to YouTube's protective measures." (*Id.* ¶ 120.)

***2** Defendant is developing several artificial intelligence ("AI") products, including "MagicVideo" and "Seedance." (*Id.* ¶ 75.) These AI products attempt to "turn[ ] language prompts into audiovisual content." (*Id.* ¶ 79.) To develop these products, Defendant "requires vast amount of [training] data." (*Id.* ¶ 80.) One such source are datasets "created by universities, corporations, and independent researchers." (*Id.* ¶ 81.) These datasets index "location identifiers that point to millions of YouTube videos or clips" that can be used to train AI models, but do not "contain[ ] the underlying audiovisual files." (*Id.* ¶ 95.) Three of those datasets—(1) HD-VILA-100M, (2) Panda-70M, and (3) HowTo100M—included index references to some of Plaintiffs' YouTube videos. (*Id.* ¶¶ 18, 21, 23.) However, "[n]one of them contains the underlying audiovisual files." (*Id.* ¶ 95.) Instead, before the datasets can be used to train an AI product, a company "must access, retrieve, and download every referenced video directly from YouTube." (*Id.*)

In research papers, Defendant's employees disclosed using the three "large-scale YouTube-derived datasets"—HD-VILA-100M, Panda-70M, and HowTo100M—to train the company's AI models. (*Id.* ¶¶ 80-82.) For example, Defendant's employees "admitted that they directly downloaded the HowTo100M dataset from YouTube, stating that they 'download videos with ASR transcripts and audio from YouTube' ...." (*Id.* ¶ 82.) Some of this usage exceeded the license on the datasets. (*Id.* ¶¶ 87, 94.) "On information and belief, Defendant used additional datasets beyond those publicly disclosed that incorporated YouTube-sourced content obtained through the same circumvention ...." (*Id.* ¶ 96.)

"Defendant accessed and obtained the [Plaintiffs'] audiovisual works" by "bypass[ing] the technological conditions [YouTube] placed on the video streams." (*Id.* ¶ 48.) Specifically, "Defendant, directly and through agents, contractors, and affiliates, intentionally accessed large volumes of YouTube videos by scraping and/or using tools and workflows that bypass or evade YouTube's protection measures." (*Id.* ¶ 99.) These tools include "[a] descrambling tool such as yt-dlp," which "circumvent[s]" YouTube's normal access controls. (*Id.* ¶¶ 103-04.) Defendant's acquisition of the videos violated YouTube's terms of service. (*Id.* ¶ 70.) "Bulk extraction of YouTube videos at the scale alleged here cannot occur without circumventing YouTube's" protection measures. (*Id.* ¶ 97.) Put differently, "[t]he sheer volume of videos in the dataset(s) necessary to train Magic Video makes any alternative explanation implausible." (*Id.* ¶ 109.) Plaintiffs never authorized Defendant to use their videos to train its generative AI models. (*Id.* ¶ 118.)

## DISCUSSION

The First Amended Complaint ("FAC") makes one claim: a violation of Section 1201(a) of the Digital Millennium Copyright Act ("DMCA"). That statute, entitled "Circumvention of copyright protection systems," provides, in relevant part, that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected by this title." 17 U.S.C. § 1201(a)(1)(A). The DMCA provides a private right of action for "[a]ny person injured by a violation of" section 1201. *See* 17 U.S.C. § 1203.

Defendant moves to dismiss on the grounds (1) Plaintiffs lack Article III standing, (2) Plaintiffs do not fall within the class of persons authorized to sue for a section 1201 violation, and (3) Plaintiffs do not plausibly allege a section 1201(a) violation.

### I. ARTICLE III STANDING

Defendant seeks to dismiss the FAC for lack of Article III standing. Article III standing requires (1) Plaintiffs have suffered an "injury in fact" that is "actual or imminent," not "conjectural or hypothetical," (2) the injury is "fairly traceable" to the defendant, and (3) the injury will "likely [...] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). In a putative class action, at least one named plaintiff must have Article III standing. *See Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026). At the motion to dismiss stage, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded" for all class members until class certification. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (cleaned up); *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("In a class action, this standing inquiry focuses on the class representatives."). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

***3** Defendant contends Plaintiffs' allegations do not "plausibly allege an injury traceable to the alleged circumvention of an access control" because the alleged injuries "stem from the alleged copying, training, and other

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

downstream exploitation of the videos—not the act of circumvention itself." (Dkt. No. 40 at 13.) Defendant does not challenge standing on the concreteness or redressability standing analysis prongs. (*See id.* at 12-13; Dkt. No. 47 at 10-11 n.1 ("The question is not whether Plaintiffs' asserted harms resemble copyright harms in the abstract; but whether they are fairly traceable to circumvention of access controls.").)

Plaintiffs allege six types of injuries: Defendants' circumvention (1) caused "lost per-view advertising revenue; (2) caused "lost YouTube Premium revenue;" (3) "deprived" Plaintiffs of "view counts and watch hours that would otherwise have contributed to Partner Program qualification;" (4) deprived "algorithmic amplification" because YouTube decides what videos to recommend based on "view counts, watch time, and engagement metrics;" (5) harmed the "market for Plaintiffs' and Class Members' content" since Defendant would no longer "seek[ ] to purchase a copy of the audiovisual file" from Plaintiffs; and (6) caused the "loss of control of [Plaintiffs'] works." (Dkt. No. 27 ¶¶ 122-27.) These alleged injuries cover both putative class members participating in "YouTube's Partner Program" and those outside of it. (*See id.* ¶¶ 121-27.) Plaintiffs do not specify to which group the named plaintiffs belong. (*See id.* ¶¶ 18-24). However, because both named plaintiffs "derive[ ] value via viewership, advertising, sponsorships, licensing, and related monetization," (*id.* ¶¶ 19, 22), the allegations support an inference they participate in the Partner Program. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.")

Drawing inferences in Plaintiffs' favor, Plaintiffs "lost per-view advertising revenue that YouTube's monetization system would otherwise have generated." (Dkt. No. 27 ¶ 122.) Furthermore, "[w]hen Defendant accessed Plaintiffs' videos by circumventing YouTube's TPMs, those retrievals generated no advertising impressions and no advertising revenue for Plaintiffs ...." (*Id.*) So, Plaintiffs plausibly allege their pocketbook injury is directly traceable to Defendant's circumvention sufficient to support standing. The views lost when Defendant circumvented YouTube's technological protection measures caused YouTube to pay Plaintiffs less in advertising revenue. *See Maya*, 658 F.3d at 1070 ("A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." (cleaned up)); *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) ("Causation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the defendant's conduct comprise the last link in the chain.").

The cases Defendant cites are inapposite as they (1) did not involve monetary harm and (2) focused on injury in fact, not how tethered the injury was to the statutory violation. *See Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F.Supp.3d 1, 6 (S.D.N.Y. 2024) (concluding "mere removal of identifying information from a copyrighted work—absent dissemination" is not enough for standing); *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) (concluding "use of public profiles to solicit paying subscribers" did not establish injury in fact); *Y.H. v. Blizzard Ent., Inc.*, No. 8:22-cv-00998-SSS-ADSx, 2024 WL 5431490, at *4 (C.D. Cal. Aug. 14, 2024) (concluding a minor's use of her "*father's* money on her *father's* account, rather than her own money on her own account" did not establish injury in fact); *Doe 1 v. GitHub, Inc.*, 672 F.Supp.3d 837, 849 (N.D. Cal. 2023) (concluding the sharing of personal data did not "demonstrate[e] an injury-in-fact sufficient to confer standing" because plaintiffs did "not identify the specific sensitive or private information at issue").

***4** Therefore, at this stage, Plaintiffs have sufficiently alleged Article III standing and Defendant's motion to dismiss under 12(b)(1) is DENIED.

## II. STATUTORY STANDING

To bring a claim under a federal statute, a plaintiff must "fall[ ] within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). In making this inquiry, courts consider whether the plaintiff is one "whose interests fall within the zone of interests protected by the law invoked," *id.* at 129 (cleaned up), and "whose injuries are proximately caused by violations of the statute." *Id.* at 132. "[L]ack of statutory standing requires dismissal for failure to state a claim" under Federal Rule of Civil Procedure 12(b)(6). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Here, under DMCA Section 1203, "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203.

Defendant argues Plaintiffs lack statutory standing because "Section 1201's private right of action runs to the owner of the circumvented measure, not every creator who posts content on a platform that deploys its own controls." (Dkt. No. 40 at 9.) To conclude otherwise, according to Defendant, would "radically expand Section 1203." (*Id.* at 14.) The Court disagrees.

"The Ninth Circuit has not defined the set of plaintiffs who fall within the DMCA's zone of interests." *Google LLC v. Serpapi, LLC*, No. 4:25-cv-10826-YGR, 2026 WL 2516719, at *4 (N.D. Cal. July 20, 2026). However, it has held Section 1201 "grants copyright owners the right to enforce [its] prohibition[s]." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). Furthermore, both the statute's plain language —"[a]ny person injured by a violation"—and its legislative history demonstrate owners of protected works are squarely within the class of plaintiffs Congress authorized to sue.[3] *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004) ("The statutory structure and the legislative history both make it clear that the DMCA granted copyright holders additional legal protections.... "). Moreover, while "[d]istrict courts considering the issue have reached inconsistent results" for plaintiffs other than copyright holders, *Google LLC*, 2026 WL 2516719, at *4, they have broadly concluded the DMCA's zone of interests includes the copyright holders whose material was protected by a technological measure. *See, e.g., Google LLC*, 2026 WL 2516719, at *4 (treating "owners and exclusive licensees of copyrighted material" as a baseline for statutory standing); *Viral DRM LLC v. Seven West Media Ltd.*, 768 F.Supp.3d 1025, 1031 (N.D. Cal. 2025) (same); *Reddit, Inc. v. SerpApi LLC*, 25 Civ. 8736 (PAE), 2026 WL 2210094, at *12 (S.D.N.Y. July 31, 2026) (same); *Squires v. Lancaster Cnty. Prison*, No. 25-CV-5490, 2025 WL 3298948, at *3 (E.D.P.A. Nov. 26, 2025) (same). Thus, Plaintiffs, as the owners of copyrighted material that has allegedly been misappropriated through a Section 1201 violation, are "[a]ny person[s] injured by a violation" and have statutory standing to bring this suit under Section 1203. *See Cordova v. Huneault*, 817 F.Supp.3d 819, 833 (N.D. Cal. 2026) ("Because [plaintiff] alleges injury based on defendants' alleged circumvention of technological measures protecting his copyrighted works, he has plausibly alleged statutory standing.").

***5** Once again, the cases cited by Defendant are unpersuasive. In *Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F.Supp.2d 1201 (S.D. Cal. 2008), the plaintiff was "not the copyright owner" and was thus alleged to "lack[ ] standing to pursue claims under the [DMCA]." *Id.* at 1205. Indeed, the *Echostar* court assumed a copyright owner, like Plaintiffs here, would have statutory standing. *See id.* at 1205 ("Nothing in the DMCA limits standing to the copyright owner.") Similarly, in *VidAngel LLC v. ClearPlay, Inc.*, 703 F.Supp.3d 1329 (D. Utah 2023), the court ruled against the plaintiff on statutory standing only "because there is no dispute of material fact that [plaintiff] is not a copyright owner or a supplier of a technological control-measure, or in privity with the same." *Id.* at 1336. So, contrary to Defendant's suggestion, these cases do not stand for the proposition "that statutory standing flows from ownership or control of the technological measure allegedly circumvented—not merely ownership of protected content hosted on a third-party platform." (Dkt. No. 40 at 14.) Tellingly, Defendant identifies no case in which "copyright ownership alone" was insufficient to generate statutory standing. (*See* Dkt. No. 47 at 12.) These cases thus reaffirm, rather than undermine, that copyright owners such as Plaintiffs are at the very heart of the "zone of interests" Congress sought to protect in Section 1201.

### III. DMCA SECTION 1201

The DMCA "create[s] two distinct types of claims." *MDY Indus.*, 629 F.3d at 944. "First, § 1201(a) prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition." *Id.* "Second, and in contrast to § 1201(a), § 1201(b)(1) prohibits trafficking in technologies that circumvent technological measures that effectively protect "a right of a copyright owner." *Id.* Plaintiffs bring a Section 1201(a) claim.

Under Section 1201(a), "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a). A "technological measure that effectively controls access to a work" is defined as a measure that, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). As for the copyright owner authority requirement, "the copyright owner must have *authorized* the implementation of a TPM; they have not required that the copyright owner himself or herself designed, implemented, or operated it." *Reddit, Inc.*, 2026 WL 2210094 at *17. And "to 'circumvent

protection afforded by a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure ....” 17 U.S.C. § 1201(a)(3)(A). Section 1201 “defines circumvention broadly,” *Reddit, Inc.*, 2026 WL 2210094 at *20, and “[a] variety of measures may ‘effectively control[ ] access’ within the meaning of subsection 1201(a)(3)(B).” *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F.Supp.3d 650, 672 (D. Conn. 2022).

Defendant does not challenge the sufficiency of Plaintiffs' allegations that their works were “protected” under Section 1201. Rather, Defendant argues Plaintiffs fail to allege a technological measure was “circumvented” because the relevant TPMs “regulate downloading, automated retrieval, and retention of copies” and do not “control access to a work in the first instance.” (Dkt. No. 40 at 15.) In other words, according to Defendant, because YouTube videos are available for public viewing, the relevant TPMs do not “control access” to a copyrighted work; instead, they merely control copying (e.g., downloading) are thus “beyond the reach of Section 1201(a).” (*Id.*) The Court is not persuaded.

First, Plaintiffs have sufficiently alleged their works were protected by technological measures that effectively control access to their works because, drawing reasonable inferences from the allegations in their favor, they authorized TPMs that control the viewing of their videos on YouTube in the first instance. Plaintiffs allege “even watching a video on YouTube,” without downloading the underlying media file, “requires satisfying technological measures.” (Dkt. No. 42 at 17; *see, e.g.,* Dkt. No. 27 ¶ 4 (“YouTube allows the public to view audiovisual works only through controlled streaming”); *id.* ¶ 37 (“While YouTube permits members of the public to view audiovisual works through its platform, such permission is ... subject to the technological conditions imposed by its delivery systems”); *id.* ¶ 44 (“Viewing a work on YouTube [ ] requires the application of a sequence of authorized processes, including the issuance and validation of session-specific tokens, execution of player-side instructions, and reconstruction of segmented media streams into a continuous audiovisual experience.”).) For example, Plaintiffs allege cryptographic proof-of-origin tokens “are generated dynamically by YouTube's official player software during an active, authenticated playback session” and, absent such a token, a user's requests are “refused.” (*Id.* ¶ 61.) Based on this allegation, this TPM operates regardless of whether a user is merely viewing or also downloading a video. Put differently, drawing inferences in Plaintiffs' favor, “in the ordinary course” of viewing a YouTube video, the proof-of-origin tokens require a “process or a treatment ... to gain access to the work.” *See* 17 U.S.C. § 1201(a)(3)(B).

***6** Second, Plaintiffs have sufficiently alleged Defendant circumvented at least some of these same measures to gain access to their works. They allege Defendant publicly acknowledged using certain training datasets, the datasets contained references to some of their videos, to use these datasets required “download[ing] each clip directly from YouTube,” and that “[b]ulk extraction of YouTube videos at the scale alleged here cannot occur without circumventing” the TPMs. (Dkt. No. 27 ¶¶ 18, 21 82, 91, 97.) At this stage, given Defendant's employees allegedly stated “that they ‘download videos with ASR transcripts and audio from YouTube,” (*id.* ¶ 82), and absent a plausible alternative explanation for how such downloads could have been acquired absent TPM circumvention, Plaintiffs have plausibly alleged circumvention. For example, Plaintiffs allege Defendant “extract[ed], replicat[ed], or reus[ed] proof-of-origin token parameters outside the authorized playback environment for which they were generated” to “retrieve video data directly.” (Dkt. No. 27 ¶ 115.) And, as Defendant acknowledges, that the same TPMs serve as both access and copy controls does not mean circumventing them cannot violation Section 1201(a). (Dkt. No. 47 at 11 (“A single measure may, of course, serve both access-and copy-control functions” (citing *VidAngel*, 869 F.3d at 864)).)

At the hearing Defendant identified *Hattler v. Ashton*, No. 16-cv-04099 JAK, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), as the best support for its position Plaintiffs do not allege actionable circumvention. In *Hattler*, the defendants “incorporated portions of two of [p]laintiff's” musical works into a live performance even after the plaintiff had declined permission. *Id.* at *1. The plaintiff's Section 1201(a) claim alleged the defendants “downloaded the Works in a manner that circumvented the technological protections on the websites where the Works were available for streaming.” *Id.* at *5. The court concluded “where § 1201(a)(1) refers to technological measure that control ‘access’ to a protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying.” *Id.* at *8.

*Hattler* is not persuasive because it predates *Disney Ent., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017). In *VidAngel*, the defendant used software to decrypt access controls on DVDs, strip the movies and television episodes

of inappropriate content, and upload them to its streaming site. *Id.* at 852-53. The DVDs were equipped with TPMs that allowed a user to view the content on "players from licensed manufacturers... only for playback, not for copying." *Id.* at 853. The defendant argued the TPMs on the DVDs were use controls under Section 1201(b), rather than access controls under Section 1201(a), similar to Defendant's argument here. *Id.* at 863. The Ninth Circuit disagreed, concluding (1) a TPM could be both an access *and* a use control and (2) a defendant could circumvent an access control under Section 1201(a) even when "there are authorized ways to access the [plaintiffs'] works." *Id.* at 864-65. Thus, under *VidAngel*, regardless of whether a TPM sometimes permits access, obtaining access *in excess of* that allowed by the copyright holder "is exactly like 'breaking into a locked room ' " in contravention of Section 1201(a). *Id.* at 864.

As one court already ruled in a similar suit brought by Plaintiffs, "[a]s alleged, the barriers exist and require users to satisfy certain conditions before obtaining access. Those barriers may be modest, perhaps by design given YouTube's business model, but they are barriers nonetheless. At the pleadings stage, Plaintiffs' allegations are sufficient." *Ted Ent., Inc. v. Snap, Inc.*, No. 2:26- cv-00754-AB-MBK, 2026 WL 2435349, at *5 (C.D. Cal. Aug. 19, 2026). Drawing inferences in Plaintiffs' favor, as the Court must, Plaintiffs' allegations here are similarly sufficient.

Therefore, Defendant's motion to dismiss under 12(b)(6) is DENIED.

**CONCLUSION**

For the reasons explained above and at oral argument, the Court DENIES Defendant's motion to dismiss.

This Order disposes of Docket No. 40.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 2970541

Footnotes

1 Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

2 Plaintiffs initially included a third plaintiff, Golfholics, Inc., but that plaintiff voluntarily dismissed its claim after the motion to dismiss had been briefed. (*See* Dkt. No. 51.)

3 The FAC is unclear as to whether all, some, or none of Plaintiffs' videos are registered with the Copyright Office. However, because both parties treat all the works identically under Section 1201, the Court will do the same. (*See* Dkt. No. 27 ¶ 13 ("Because copyright registration is not a prerequisite for protection against unlawful circumvention of access controls...."); Dkt. No. 47 at 8 ("Unregistered works may be protected by Section 1201....").)

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.