USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 10/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ACE CAM, INC. and BUSINESSING LLC, each individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

26-cv-1362 (LAK)

RUNWAY AI, INC.,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION DENYING DEFENDANT RUNWAY AI, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Appearances:

Gary M. Klinger
Mark Svensson
MILBERG PLLC

James E. Cecchi
Kevin G. Cooper
CARELLA, BYRNE, CECHI, OLSTEIN, BRODY & AGNELLO, P.C.

Jarrett L Ellzey
ELLZEY & ASSOCIATES PLLC

Michael Acciavatti
MILBERY COLEMAN BRYSON PHILLIPS GROSSMAN

Tom Kherkher
EKSM, LLP

Tina Wolfson
AHDOOT & WOLFSON, PC

*Attorneys for Plaintiffs*

Annette Louise Hurst
Hilda Obeng
Marc Shapiro
Nathan Shaffer
Vanessa Sorrentino
ORRICK, HERRINGTON & SUTCLIFFE LLP

*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

This action arises from alleged violations of the Digital Millennium Copyright Act ("DMCA"). Plaintiffs allege that defendant circumvented YouTube's technological protection measures to "scrape" plaintiffs' content on YouTube for purposes of feeding, training, improving, and commercializing defendant's artificial intelligence ("AI") model systems. Defendant moves to dismiss the consolidated class action complaint under Rule 12(b)(6).

## *Facts*

This is a putative class action brought by plaintiffs Ace Cam, Inc. d/b/a Random Golf Club ("RGC") and Businessing LLC ("BLLC") on behalf of themselves and content creators on YouTube whose works have been scraped without authorization. Defendant Runway AI, Inc. ("Runway") is a company developing generative text-to-video and image-to-video AI models. Plaintiffs allege that Runway trains its AI models on datasets containing plaintiffs' content onYouTube.[1] Plaintiffs assert that defendant is in breach of the anti-circumvention provisions of 17 U.S.C. § 1201(a).

---

[1] Compl. (Dkt. 33) ¶¶ 69, 73-74,

*YouTube's Terms of Service and TPMs*

YouTube's terms of service prohibit scraping, unauthorized downloading, bulk extraction, or other forms of data mining content except with express permission or license.[2] Creators who upload content onto YouTube grant access to content through YouTube's service but do not grant rights or permissions for another user to make use of the content independent of YouTube.[3] Plaintiffs identify five "technological protection measures" ("TPMs") employed by YouTube to ensure that content on its platform is viewed only through its authorized playback mechanism. These include: (1) a rolling cipher which protects access to the audiovisual file by withholding a usable file location until an authorized transformation of a scrambled digital signature occurs, at which point the file is displayed to the user;[4] (2) IP-blocking and rate limiting to prevent the retrieval of content when abnormal request volumes are detected;[5] (3) session-bound URLs which deliver content in response only to a URL connected to a particular use session;[6] (4) CAPTCHA challenges which separate human users from bots, which are required when traffic

---

2 *Id.* ¶ 60.

3 *Id.* ¶ 61 (citing "Terms of Service," YOUTUBE, https://www.youtube.com/t/terms).

4 *Id.* ¶¶ 44-45.

5 *Id.* ¶¶ 47-48.

6 *Id.* ¶ 50.

patterns indicate automated or suspicious activity;[7] and (5) proof-of-origin tokens to validate that all requests for video segments originate from an authorized YouTube playback environment.[8]

YouTube maintains these TPMs to ensure that the content can be viewed only by users on YouTube's platform and that they cannot be downloaded in violation of its terms of service.[9] Creators who upload their content onto YouTube "affirmatively authorize YouTube to act as their platform and to deploy the TPMs that protect their content."[10]

*Plaintiffs' Allegations*

Plaintiffs allege that defendant circumvented YouTube's TPMs by using tools that automated accessing and downloading content on YouTube to train its AI models. Defendant does not have authorization from YouTube or plaintiffs to download, copy, or use audiovisual works on YouTube.[11] Plaintiffs allege that defendant instead "directly and through agents, contractors, and affiliates, has intentionally accessed large volumes of YouTube videos by scraping and/or using tools and workflows that bypass or evade YouTube's TPMs and usage restrictions, and then

---

7 *Id.* ¶ 51.

8 *Id.* ¶ 56.

9 *Id.* ¶¶ 29, 67.

10 *Id.* ¶ 144.

11 *Id.* ¶ 87.

reproduced those videos to assemble training corpora for Defendant's AI models and services."[12] Specifically, plaintiffs allege that the rolling cipher must have been defeated through one or more descrambling tools, such as yt-dlp, to allow direct access to underlying media files.[13] Plaintiffs reason also that defendant circumvented YouTube's delivery to session-bound URLs because defendant was able to continue accessing files after session-specific authorization parameters had lapsed.[14] They allege also that defendant executed an IP rotation scheme to cycle through different IP addresses to avoid detection and blocking before platform access can be terminated, overcoming YouTube's IP blocking, CAPTCHA challenges, and requiring proof-of-origin tokens.[15]

Plaintiff BLLC alleges that as a result of its circumvention of YouTube's TPMs defendant has scraped at least 1,200 of BLLC's videos on YouTube.[16] Plaintiff RGC alleges that defendant has scraped at least 390 RGC videos on YouTube.[17] Both plaintiffs allege that they, along with other class members, have been harmed by defendant's conduct in six ways. First, they allege that plaintiffs and class members who participate in YouTube's Partner Program lost advertising

---

12 *Id.* ¶ 93

13 *Id.* ¶ 95.

14 *Id.* ¶ 105.

15 *Id.* ¶¶ 99-108.

16 *Id.* ¶ 18.

17 *Id.* ¶ 20.

revenue that otherwise would have been generated through YouTube's monetization system.[18] Second, they allege that plaintiffs and class members lost YouTube Premium revenue that otherwise would have been generated through YouTube's subscription monetization system.[19] Third, they allege that plaintiffs and class members who had not yet qualified for YouTube's Partner Program were deprived of view counts and watch hours that otherwise would have contributed to their qualifications for the Partner Program, delaying or impairing their ability to join YouTube's monetization system.[20] Fourth, they claim that all plaintiffs and class members suffered economic injury through the loss of algorithmic amplification, whereby legitimate streaming views would have generated organic growth, subscriber acquisition, and expanded monetization potential.[21] Fifth, they allege that plaintiffs and class members were harmed in that the market for their content, which otherwise would have been purchased, was instead downloaded by bypassing YouTube's TPMs.[22] Finally, they allege that plaintiffs and class members lost control of their works.[23]

---

[18] *Id.* ¶ 112.

[19] *Id.* ¶ 113.

[20] *Id.* ¶ 114.

[21] *Id.* ¶ 115.

[22] *Id.* ¶ 116.

[23] *Id.* ¶ 117.

Plaintiffs brought this putative class action against defendant for violations of the anti-circumvention provision of 17 U.S.C. § 1201(a). They seek also statutory damages under 17 U.S.C. §1203 as well as equitable relief.

## ***Discussion***

*Legal Standard*

At the motion to dismiss stage, the Court assumes the truth of all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff.[24] To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[25] Dismissal is appropriate where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."[26]

*Plaintiffs' Section 1201(a) Claim*

Under Section 1201(a), "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."[27] A "technological measure that effectively controls access to a work" is one that, "in the ordinary course of its operation, requires

---

[24] *See, e.g.*, *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[26] *Id.* at 558.

[27] 17 U.S.C. § 1201(a)(1)(A).

the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."[28] "Circumvention" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure."[29]

Defendant disputes that Section 1201(a) protects plaintiffs' content and argues that plaintiffs have failed to state a claim as a matter of law.[30] Defendant first cites to the language of Section 1201(a) to contend that the statute contemplates only unauthorized access to a work.[31] Plaintiffs' content on YouTube, defendant argues, is not inaccessible in that it is not "scrambled" or "encrypted" as it is publicly available for view.[32] It contrasts access controls against copy controls prescribed in Sections 106 and 501 of the Copyright Act, arguing that plaintiffs' alleged injuries can result only from the circumvention of copy controls, which are not subject to Section 1201.[33]

The Court disagrees with defendant's conclusion for a number of reasons. First, defendant insists that work protected by Section 1201(a) must be "fully unintelligible until

---

28 17 U.S.C. § 1201(a)(3)(B).

29 17 U.S.C. § 1201(a)(3)(A).

30 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 9.

31 *Id.* at 10.

32 *Id.* at 12 (citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001)).

33 *Id.* at 13-15.

descrambled or unencrypted."[34] But while "scrambling and encryption are prima facie examples of technological measures . . . it does not follow that scrambling and encryption constitute an exhaustive list."[35] Section 1201 explains that a "technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."[36] Here, plaintiffs have alleged that their content was protected by "technological processes and tools to detect and block access to files for unauthorized downloading."[37] The complaint alleges that creators "affirmatively authorize YouTube to act as their platform and to deploy the TPMs that protect their content."[38] "These measures function as access controls because they condition access to the audiovisual work on the application of authorized processes and prevent users from obtaining the work outside of YouTube's controlled delivery system."[39] Defendant's argument that YouTube's TPMs amount to copy controls is also unpersuasive because Section 1201 "does not provide that a TPM cannot serve as both an access control and a use

---

34 *Id.* at 18.

35 *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 671 (D. Conn. 2022).

36 17 U.S.C. § 1201(a)(3)(B).

37 Compl. (Dkt. 33) ¶ 30.

38 *Id.* ¶ 144.

39 *Id.* ¶ 37.

control."[40] Plaintiffs therefore have alleged sufficiently that their content on YouTube is protected by Section 1201(a).

Defendant further argues that accessing plaintiffs' content requires no circumvention because it is publicly available on YouTube.[41] The fact that anyone can watch and listen to videos on YouTube for free, defendant argues, is dispositive of the case because plaintiffs cannot sufficiently allege that access to their videos is gated off under Section 1201.[42] Defendant points to how, in contrast to other cases where Section 1201(a) was found to have been violated, users did not need to "input a password or authenticate through a paywall" to view videos on YouTube.[43] Defendant would conclude on this basis that plaintiffs' complaint fails to make sufficient factual allegations because there has not been any circumvention of a technological measure.[44]

Defendant's argument fails, as Section 1201(a) defines circumvention broadly to encompass any measures which "otherwise . . . avoid, bypass, remove, deactivate, or impair a technological measure."[45] Here, plaintiffs have made at least a plausible showing that at least one of YouTube's TPMs has been circumvented. They allege that (1) defendant was able to download

---

40 *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864 (9th Cir. 2017).

41 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 9-10.

42 *Id.* at 17 (citing *hiQ Labs, Inc. V. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022)).

43 *Id.* at 16-17 (citing *Corley*, 273 F.3d at 435).

44 *Id.* at 9-10.

45 *Reddit, Inc. v. SerpApi LLC*, 840 F. Supp. 3d 308, 345 (S.D.N.Y. 2026).

videos from YouTube despite the rolling cipher;[46] (2) despite defendant's downloading activity, which would normally trigger YouTube's IP blocking and rate limiting measures, defendant was able to continue downloading content in bulk;[47] (3) defendant's bulk downloading necessarily circumvents "the temporal and session-based restrictions imposed by YouTube and allows persistent retrieval of files in a manner not available to ordinary users";[48] (4) defendant was able to bypass YouTube's CAPTCHA challenges normally triggered by large-scale scraping operations;[49] and (5) defendant was able to overcome YouTube's restriction of video playback to authorized sessions, potentially through IP rotation or descrambling tools specifically designed to present valid-appearing proof-of-origin credentials to access content outside of YouTube's authorized playback environment.[50]

Defendant's argument that YouTube content is publicly available to view also is unavailing. Plaintiffs allege that "YouTube only delivers audiovisual works through a controlled streaming architecture that transmits segmented, time-limited portions of a work for ephemeral playback within YouTube's proprietary player environment."[51] They explain that all users are

---

46 Compl. (Dkt. 33) ¶ 45.

47 *Id.* ¶¶ 47-48, 78.

48 *Id.* ¶ 51.

49 *Id.* ¶¶ 53-54.

50 *Id.* ¶¶ 56-58.

51 *Id.* ¶ 32.

subject to these TPMs regardless of their viewing or downloading activity.[52] YouTube's TPMs therefore operate regardless of whether a user is viewing or attempting to download a video. The public nature of content that has been uploaded to YouTube does not render it unprotected because the public's viewership of the content necessarily is subject to YouTube's TPMs.

Defendant explains that creating a copy of a work is distinct from accessing the work itself and would extend this reasoning across YouTube's TPMs, reasoning that each TPM is at most a copy control because it is designed to combat unauthorized downloading activity.[53] Likewise, defendant insists that its alleged wrongdoing boils down to copying plaintiffs' videos from YouTube and falls outside the conduct forbidden under Section 1201(a).

Defendant's characterization is unavailing. Plaintiffs allege that "[v]iewing a video on YouTube . . . requires the application of a sequence of authorized processes, including the issuance and validation of session-specific tokens, execution of player-side instructions, and reconstruction of segmented media streams"[54] regardless of downloading activity.

Defendant counters that these are not true access controls. For example defendant states, conclusively, that short-lived URLs do not prevent access because the server ceases delivery of audiovisual files supposedly only once the authorization window expires or the session ends.[55]

52 *Id.* ¶ 62.

53 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 21-23.

54 Compl. (Dkt. 33) ¶ 38.

55 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 26-27.

But in alignment with defendant's conception of "binary" access controls,[56] plaintiffs' complaint alleges that YouTube's TPMs will block all activity, including simple video playback, once these TPMs are triggered. Even if content initially is displayed, YouTube ceases delivery of audiovisual files to users who fail verification through their session bound URLs, the rolling cipher, or CAPTCHA tests.[57] Plaintiffs therefore have alleged sufficiently that YouTube's TPMs function as access controls.

Defendant then falls back again on the principle that overcoming YouTube's TPMs does not constitute circumvention under Section 1201(a) because there is no evidence of an affirmative act "that disables or voids the measure that was installed to prevent [defendant] from accessing the copyrighted material."[58] But, as explained above, Section 1201 defines circumvention broadly to encompass any measure which bypasses, removes, deactivates, or impairs a technological measure.[59] Here, plaintiffs plausibly have alleged that defendant's bulk download activity bypassed at least one of YouTube's TPMs.

Finally, defendants argue that plaintiffs have failed to state a claim under Section 1201 because plaintiffs did not allege authority over YouTube's TPMs.[60] Section 1201 explains that

---

56 *Id.* at 12.

57 Compl. (Dkt. 33) ¶¶ 95, 106, 108.

58 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) (quoting *Dish Network LLC v. World Cable Inc.*, 893 F.Supp. 2d 452, 466 (E.D.N.Y. 2012)).

59 17 U.S.C. § 1201(a)(3)(A).

60 Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 30-31.

a technological measure effectively controls access to a work if, in the ordinary course of its operation, it requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.[61] Defendant relies on this language to argue that because plaintiffs did not allege any effort to "put in place" the technological measures maintained by YouTube, they "cannot meet the 'authority of the copyright owner' element of the statutory definition of 'technological measure.'"[62]

Defendant's argument attempts to introduce into the statutory text requirements beyond its plain meaning. Section 1201(a) does not state or imply that plaintiffs themselves must put in place the technological measures controlling access to their work.[63] It requires only that plaintiffs allege that their work was subject to the circumvented TPMs.[64] Here, plaintiffs plausibly have pleaded that they authorized YouTube to put TPMs in place to guard access to their work. The complaint explains that creators who upload their content onto YouTube"affirmatively authorize YouTube to act as their platform and to deploy the TPMs that protect their content."[65] In other words, "[i]n uploading content to YouTube, content creators are authorizing and instructing

---

[61] 17 U.S.C. § 1201(a)(3)(B).

[62] Def.'s Memo. Supp. Mot. Dismiss (Dkt. 35) at 31.

[63] *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 665 (D. Conn. 2022).

[64] *Id.* at 665-66.

[65] *Id.* ¶ 144.

YouTube to provide protection to the video content through YouTube's anti-circumvention software."[66]

*Conclusion*

For the forgoing reasons, defendant's motion to dismiss the consolidated class action complaint is denied.

SO ORDERED.

Dated: October 30, 2026

Lewis A. Kaplan
United States District Judge

66 *Id.* ¶ 9.